Ralph A. ADKINS, Petitioner,

v.

**DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, Respondent.**

**Appeal No. 84–1706.**

United States Court of Appeals, Federal Circuit.

Jan. 16, 1986.

---

* This treatment of movants is in accordance with Supreme Court rules on *appeals* to that court. See Supreme Court Rule 10.4.

Gerald H. Cohen, Washington, D.C., argued, for petitioner.

Kathleen M. Miko, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan. Diane DiQuinzio, Office of the Gen. Counsel, Dept. of Housing and Urban Development, of counsel.

Before DAVIS, BALDWIN, and KASHIWA,* Circuit Judges.

KASHIWA, Circuit Judge.

Ralph A. Adkins (Adkins) appeals from the decision of the Merit Systems Protection Board (MSPB or Board), Docket No. AT04328310296 (24 May 1983), which affirmed Adkins' removal from his GS-3 Clerk-Typist position by the Department of Housing and Urban Development (HUD or agency) under Chapter 43 of Title 5 for unacceptable performance. We affirm.**

---

* Judge Kashiwa retired on 7 January 1986. Before his retirement he participated in the consideration and decision of this case. Before Judge Kashiwa's retirement all members of the panel joined in this opinion.

** This appeal had been disposed of in an unpublished opinion issued on 8 July 1985. In response to an unopposed motion by the Government, the present published opinion is substituted for the prior unpublished opinion.

## Background

Adkins had been employed as a Clerk-Typist with the Knoxville office of HUD for more than ten years prior to his removal on 10 December 1982. The agency had implemented a performance appraisal system which established performance standards under which Adkins' work was evaluated. A critical element of Adkins' performance standards was "typing," which was comprised of five subelements: (1) Typing output; (2) Typing priorities are followed; (3) Typing is accurate; (4) Typing product is neat and clean; and (5) Supervisor is promptly notified when requirements cannot be met. In order to be fully satisfactory in this critical element, the agency expected Adkins to produce two to three pages of typing output per hour, anything less was considered unsatisfactory.

Adkins' first-line supervisor issued a 60-day warning notice on 26 October 1981 informing Adkins that he would be given an unsatisfactory performance rating unless his performance improved in the critical element "typing" and in the non-critical element "adherence to office administrative procedures." Subsequent to the October notice Adkins performance was reevaluated, and it was determined that Adkins had made insufficient improvement towards meeting the requirements of the critical element "typing", i.e., his "typing output" was less than two to three pages per hour as required by his performance standard.

Agency action on Adkins' final performance rating was subsequently deferred for consideration of matters lying outside of this appeal. In an administrative action taken on 30 July 1982, following Adkins' reevaluation, the first-line supervisor revised Adkins' critical element "typing" by lowering the minimum typing output for a satisfactory rating from two pages per hour to one page per hour. Adkins was advised of this revision on 2 August 1982.

On 18 August 1982 Adkins' performance was evaluated under this revised standard, and it was determined that Adkins' typing output had fallen below 1 page per hour on four days. Adkins' supervisor counseled him as to the performance expected under these revised standards, and gave him a final warning that action would be taken if his typing output failed to meet the standard of at least one page per hour for the period 2 August—30 September 1982. A notice of proposed removal was issued to Adkins on 29 October 1982 based upon unsatisfactory performance in the critical element "typing." Adkins was subsequently removed for unsatisfactory performance by the agency, an action which Adkins appealed to the MSPB.

The presiding official found that it was uncontroverted that the revised standards of 30 July 1982 had been communicated to Adkins, and that during the critical period from 2 August to 30 September Adkins had typed 248½ pages in 268¾ hours, an average of less than one page per hour. And further that on 21 of the 37 days of this period during which Adkins typed for one hour or more, his performance was unsatisfactory.

Based upon a review of the record the presiding official found that the standard of one page per hour was reasonable and that "typing" was clearly a critical element of Adkins' position as a Clerk-Typist. While noting that Adkins' performance in the other subelements of the critical element "typing" was at least marginally satisfactory or better, the presiding official found that Adkins' performance in these other subelements, when considered in conjunction with his performance with respect to "typing output", did not raise his performance in the critical element "typing" to a level above unsatisfactory.

Finally, the presiding official found by substantial evidence that Adkins had failed to meet the "typing output" standard during the period from 2 August—30 September 1982.

## OPINION

All agencies are required by 5 U.S.C. § 4302 to develop and implement performance appraisal systems. A performance appraisal system must provide "for estab-

lishment of performance standards, identification of critical elements, communication of standards and critical elements to employees, establishment of methods and procedures to appraise performance against the established standards, and appropriate use of appraisal information in making personnel decisions." 5 CFR § 430.202(a). *See also* 5 U.S.C. § 4302(b); *Lovshin v. Department of the Navy*, 767 F.2d 826, 833 (Fed.Cir.1985).

A critical element is defined as "a component of an employee's job that is of sufficient importance that performance below the minimum standard established by management requires remedial action ... and may be the basis for removing or reducing the grade level of that employee." 5 CFR § 430.202(e). *See also* 5 U.S.C. § 4303(a). Under the law, performance which fails to meet established standards in one or more critical elements of the employee's position is considered unacceptable. 5 U.S.C. § 4301(3); *Lovshin*, 767 F.2d at 834.

Two arguments were presented by Adkins on appeal: (1) That HUD had failed to establish that it had the statutorily-required Office of Personnel Management (OPM)-approved performance appraisal system in effect at the time of Adkins' removal, 5 U.S.C. §§ 4302–4304; and (2) That both the content and implementation of Adkins' performance standards constituted an abuse of discretion by the agency.

The Board found that it was uncontroverted that HUD had implemented a performance appraisal system, and that this system had been approved by OPM. This finding was based upon two letters from OPM, dated 16 August 1979 and 10 November 1980, submitted by the agency. Adkins argues that these letters, plus the testimony of a HUD official, raised a doubt as to whether an OPM-approved performance appraisal system was in effect during the relevant period, and therefore an evidentiary inquiry on this point should have been made.

 We would note that the proceedings before the MSPB were the evidentiary inquiry on this point. The agency introduced the two OPM letters to establish that its performance appraisal system had been approved by OPM. The 10 November letter stated pointedly that "[t]his appraisal plan was approved provided the modifications were made and a copy submitted to this office. This letter certifies that the plan was approved on August 16, 1979." The testimony of the HUD official cited to by Adkins is not relevant to the issue of whether HUD had OPM approval of its performance appraisal system. Rather, this testimony related to the establishment of a "marginally satisfactory" performance standard. Establishment of a marginally satisfactory performance standard, however, was not one of the "Required Actions" or modifications mandated by the OPM letter of 16 August, and therefore is not probative on the issue of whether HUD's performance appraisal system complied with the requirements of Chapter 43, as determined by OPM. Under these circumstances, we conclude that there was substantial evidence to support the Board's finding that HUD's performance appraisal system had been approved by OPM. 5 U.S.C. § 7703(c). Our conclusion is buttressed by Adkins' failure to submit evidence directly related to this issue.

 Although Adkins contends that his performance standards were vague and unclear, his argument on this issue is unfocused, being general and conclusory in nature. A review of the "factual" content of Adkins' Statement of the Case, however, permits this court to surmise what points Adkins intended to argue. To wit: (1) That the use of a log system to monitor Adkins' performance was an abuse of discretion; (2) That the treatment of the critical element "typing" by focusing almost entirely on the subelement "typing output" was an abuse of discretion; and (3) That the "daily" performance standard, i.e., the number of days on which Adkins' "typing output" could fall below one page per hour but Adkins' overall performance in the critical element "typing" would still be considered

satisfactory, was vague and unclear, and contrary to the law.

Adkins' supervisor recorded Adkins' typing output in a log for several months, and this log was subsequently used to establish Adkins' "typing output" performance standard. Contrary to Adkins' assertion that this monitoring system was punitive in nature and intended to take advantage of Adkins' handicap (epilepsy), the use of this monitoring system appears to be a reasonable method of establishing a "typing output" standard which is objective, and one that accommodates Adkins' handicap. By averaging typing output over an extended period, taking into account the hours expended and typing output only for work assigned by Adkins' supervisor, the "typing output" performance standard so derived would be both reasonable and objective. *Wilson v. Department of Health & Human Services*, 770 F.2d 1048, 1052 (Fed. Cir.1985) ("[U]nder the statute's objectivity requirement performance standards must be reasonable, sufficient in the circumstances to permit accurate measurements of the employee's performance, and adequate to inform the employees of what is necessary to achieve a satisfactory or acceptable rating.").

Since "typing output" is but one of five subelements of the critical element "typing", Adkins argues that it was error for the Board to sustain the agency removal action when his performance was unsatisfactory only with respect to "typing output", thereby in effect *ex post facto* elevating "typing output" to the status of a critical element.

The Board, in *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 627–28 (1984), found that the performance standard for a critical element may consist of more than one component or subelement, and that an employee may be required to perform acceptably with respect to each subelement or subelements of the performance standard for a critical element. But, the Board qualified this proposition, stating that the agency must present substantial evidence that the employee's performance

warranted an unacceptable rating on the critical element as a whole. *Id.* at 628. The evidence the agency may submit to satisfy its burden of proof on this point includes:

(1) (a) evidence demonstrating that the employee knew or should have known the significance of the subelement or subelements at issue; and

(b) evidence demonstrating that the employee's deficiencies are significant enough to justify the action taken; or

(2) evidence of other circumstances showing the importance of the subelement or subelements of the standard at issue, such as:

(a) evidence showing the importance of the subelement or subelements in relation to the duties and responsibilities with which the critical element as a whole is concerned;

(b) evidence showing the relative importance of the subelement or subelements with respect to which the employee has not been found deficient; and

(c) evidence showing the consequences to the agency's mission by the employee's failure to perform acceptably with respect to the subelement or subelements at issue.

*Id.* at 628–29.

The Board noted the testimony of Adkins' supervisor on the importance of the subelement "typing output." Adkins' supervisor considered the "typing output" performance standard to be the dominant subelement of the critical element "typing." The Memorandum of 26 October 1981 clearly placed Adkins on notice as to the importance of "typing output" since this memo proposed to give Adkins an overall unsatisfactory evaluation on the basis of his performance with respect to "typing output."

The Board further found that Adkins' glaring deficiency in "typing output" was not counterbalanced by acceptable performance in the other subelements of the critical element "typing", and therefore that his overall performance with respect to this

critical element was unacceptable. Moreover, the Board found that Adkins' acceptable performance in some of these other subelements was achieved at the expense of the "typing output" subelement.

Finally, it is evident that Adkins' failure to acceptably perform in accordance with the "typing output" subelement would deleteriously affect the agency's mission since internal agency correspondence, correspondence with other Government agencies, and correspondence with the public are critical factors for the effective functioning of any agency. The Board's decision was in accordance with the law, and its findings are supported by substantial evidence.

Lastly, Adkins argues that the Board erred in sustaining the agency's removal action since the relevant performance standard required the measurement of Adkins' typing output in daily increments, yet there was no objective indicia as to how many days Adkins could fall below the one page per hour standard and still be adjudged to be performing acceptably with respect to "typing output."

Section 4302(b) of Title 5 calls for performance standards "which will . . . permit the accurate evaluation of job performance on the basis of objective criteria." But, this requirement is qualified by the phrase "to the maximum extent feasible", and therefore § 4302(b) does not require that performance standards be composed exclusively of objective criteria. *See Wilson*, 770 F.2d at 1055–56 ("[S]ome tasks may be rated only with a certain modicum of subjective judgment . . . . the objectivity requirement must be met only 'to the maximum extent feasible.' "); *Shuman*, 23 M.S. P.R. at 626. In the instant case Adkins' supervisor applied the objective criteria "typing output", i.e., one page per hour, in a subjective manner in determining whether Adkins had performed acceptably with respect to the subelement "typing output." Under the facts of this case we do not perceive any reversible error on the part of the Board in sustaining the agency's removal action. Adkins was counseled both verbally and in writing as to the impor-

tance of his typing output, that his typing output was to be evaluated on a daily basis, and the consequences that could result from unacceptable performance. The presiding official found that on 21 of 37 days, approximately 56.8% of the period of 2 August—30 September, Adkins' performance was unsatisfactory, his typing output was less than one page per hour. The presiding official noted that while Adkins' argument that the "typing output" standard was vague because it did not delineate an objective basis for the number of days of unsatisfactory performance in "typing output" which would result in an overall rating of unsatisfactory for the critical element "typing" might have been persuasive under other circumstances, under the present circumstances it was not. We agree. The record reflects that Adkins was counseled by his first-line supervisor on 18 August 1982 that his performance under the critical element "typing" for the period 2 August-18 August was less than acceptable, i.e., his "typing output" was less than one page per hour on four of seventeen days (23.5%). This should have alerted Adkins as to what objective daily performance was required of him. *Wilson*, 770 F.2d at 1056.

Adkins has not persuaded us that the Board's decision was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, obtained without procedures required by law, rule or regulation, or unsupported by substantial evidence. 5 U.S.C. § 7703(c). Accordingly, the decision of the MSPB in Docket No. AT04328310296 is affirmed.

AFFIRMED.