David C. ROGERS, Sr. and the Overseas Education Association, Petitioners,

v.

DEPARTMENT OF DEFENSE DEPENDENTS SCHOOLS, GERMANY REGION, Respondent.

Appeal No. 86–888.

United States Court of Appeals, Federal Circuit.

March 13, 1987.

Richard J. Hirn, Washington, D.C., argued for petitioners. With him on brief was Michael Mauer, APO New York, of counsel.

Karen S. Fishman, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for respondent. With her on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Karen S. Davis, Deputy Gen. Counsel, Office of Dependents Schools, Department of Defense, of counsel.

Before DAVIS, SMITH and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

David C. Rogers, Sr.[1] seeks review of a Federal Mediation & Conciliation Service

---

1. DODDS has moved to dismiss the Overseas Educational Association as a petitioner in this appeal on the ground that it lacks statutory standing to appeal. Since Rogers has standing to petition for review, and in view of our determination to affirm the arbitrator's award, it is unnecessary in this particular case to consider the motion, and we decline to do so. A determination on the motion would not affect the disposition of this case. *See American Federation of Government Employees, Local 2718 v. Depart-*

Opinion and Award sustaining the decision of the Department of Defense Dependents Schools, Germany Region (DODDS or agency), to remove him for unacceptable performance pursuant to 5 U.S.C. § 4303 (1982). We affirm the arbitrator's award.

## BACKGROUND

Rogers was a social studies teacher for DODDS at the Kaiserslautern High School in Germany from 1974 until his removal in 1983.

Beginning in 1981, several conflicts arose between Rogers and the school principal, Dr. Killian. Killian effectively blocked Rogers' selection to be business department chairman, even though Rogers was the faculty's nominee and customarily would have been appointed. Another dispute involved Rogers' effort to run for a seat on the School Advisory Committee in his role as a parent rather than as a teacher. Killian issued a rule prohibiting teachers from seeking membership on the Committee as parents. In 1982, Killian recommended that Rogers be suspended for allegedly starting a rumor that another teacher got a promotion for having an affair with Killian. However, the DODDS regional office found insufficient evidence to support the allegation.

Rogers received a minimally acceptable performance rating for the 1981–1982 school year from his then supervisor, Vice Principal Holley. In the fall of 1982, Rogers was assigned to a new supervisor, Dr. Sandra Matthys. Matthys developed performance standards for employees under her supervision and placed those standards in effect on or about September 30, 1982. The standards entailed five job elements, two of which, "Student Assessment" and "Instructional Program", were deemed critical for satisfactory job performance. Included in the job element "Student Assessment" was the requirement that a teacher develop and administer a "system of student assessment ... which provides feedback to the students at least twice weekly" and a "written grading system compatible with the established system." Included in the job element "Instructional Program" was the requirement that a teacher prepare "daily written lesson plans" and a "general semester course outline in two week blocks."

On October 28, 1982, Matthys sent Rogers a written reminder that general semester course outlines were required. On November 3, 1982, she wrote to him directing him to submit a written grading system. Matthys continued to note numerous deficiencies in Rogers' performance during her classroom observations, and on December 6, 1982 she issued him a warning letter indicating that his performance was at a less than satisfactory level. The stated purpose of this letter was to identify critical job elements that Rogers was failing to meet and to identify the specific action that he had to initiate and maintain in order to achieve a satisfactory performance level. Among the deficiencies noted were Rogers' failure (1) to maintain a gradebook indicating twice weekly feedback to students, (2) to develop a written grading system which specified the weighting of factors used in the determination of grades, (3) to submit the required course outlines, and (4) to prepare lesson plans which included learning objectives and activities to reach those objectives. This warning letter, which was hand-delivered to Rogers in his classroom, gave him until January 31, 1983 to correct the deficiencies in his performance.

In response, Rogers provided Matthys with course outlines on December 7, 1982 and two days later provided her a written clarification of the weighting of factors and the meaning of symbols used in his grading system. Rogers, his union attorney, Matthys and Killian, met on December 15, 1982. At that meeting, Matthys told Rogers that his revised grading system submitted December 9, 1982 was deficient because it did not explain how class participation was factored into students' grades and did not explain how homework grades were assessed. She also told him that his course outlines were deficient because they only covered sixteen to eighteen weeks of the twenty week semester. On January 6, 1983, Rogers submitted a memorandum

dated January 3, 1983, which included a revised written grading system.

A second meeting, attended by Rogers, his union attorney, Matthys and Killian, was held on January 7, 1983. In that meeting, Matthys informed Rogers that his revised grading system, submitted January 6, 1983, was inadequate because it did not include an explanation of grades given for class participation.

Rogers claimed that on January 10, 1983, he provided revised course outlines and a further explanation of the way in which classroom participation was factored into the course grade. Matthys denied receiving these documents. On January 17, 1983, Matthys notified Rogers on a class evaluation form that she had yet to receive an explanation of his grading system. Rogers, his union attorney, Matthys and Vice Principal Holley again met on January 21, 1983, but failed to resolve any issues.

In a memorandum dated January 25, 1983 Matthys repeated her request for clarification of Rogers' grading system and stated that he did not have enough grades in his gradebook to comply with the twice weekly feedback aspect of his job performance standards. Rogers replied in a memorandum dated January 26, 1983 that he had previously furnished Matthys with revised course outlines and a written grading system on January 4, 1983.

Finding that Rogers had failed to correct the deficiencies in his performance, Matthys issued him a notice of proposed removal on February 15, 1983. A notice of decision removing Rogers effective May 20, 1983 was issued by DODDS Education Program Administrator Franklin Hill on May 5, 1983.

The arbitrator sustained Rogers' removal in an Opinion and Award dated November 26, 1985. In doing so, the arbitrator, on the basis of lack of jurisdiction, refused to review the content of the performance standards applied to Rogers. In a credibility determination, the arbitrator declined to accept Rogers' testimony that a revised grading system and revised course outlines had been given to Matthys on January 10, 1983. He thus found that Rogers did not satisfy the critical elements "Student As-sessment" and "Instructional Program" due to the deficiencies in his grading system, his failure to prepare and follow lesson plans, his delay in submitting course outlines and his failure to correct these deficiencies during the improvement period. Although the arbitrator found that other teachers had not fully complied with their performance standards, he rejected Rogers' claim of disparate treatment. Finally, the arbitrator rejected Rogers' claim that his removal was based on reprisal because of his criticism of DODDS management, and, in particular, of Killian. The arbitrator noted that the decision to remove Rogers was made by Hill on the recommendation of Matthys, not by Killian, and that the evidence supported their conclusion that Rogers had not met his performance standards in two critical elements.

## DISCUSSION

■ An arbitrator's decision in a personnel case is subject to review by this court "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board...." *Cornelius v. Nutt,* 472 U.S. 648, 105 S.Ct. 2882, 2890 n. 16, 86 L.Ed.2d 515 (1985); *Hunt v. Department of Health and Human Services,* 758 F.2d 608, 611 (Fed.Cir.1985); *Grigsby v. United States Department of Commerce, National Weather Service,* 729 F.2d 772, 774 (Fed. Cir.1984). Thus, the arbitrator's award must be sustained unless it is found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedure required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. §§ 7121(f) and 7703(c) (1982); *Warren v. Department of Army,* 804 F.2d 654 (Fed.Cir.1986). Moreover, in reviewing performance-based actions taken under chapter 43 of Title 5 of the United States Code, this court must "give deference to the judgment by each agency of the employee's performance in light of the agency's assessment of its own personnel needs

and standards." *Lisiecki v. Merit Systems Protection Board,* 769 F.2d 1558, 1564 (Fed.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986), quoting S.Rep. No. 969, 95th Cong., 2d Sess. 45, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, 2767.

■ A. Executive agencies are required by 5 U.S.C. § 4302(b)(1) (1982) to establish and implement performance appraisal systems that "will, to the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria ... related to the job in question for each employee or position under the system...." Rogers argues, citing *Wilson v. Department of Health and Human Services,* 770 F.2d 1048, 1051–52 (Fed.Cir. 1985), and the agency concedes, that he was entitled, in the arbitration proceeding, to challenge his performance standards as failing to meet the requirements of § 4302(b)(1). We agree that the arbitrator erred in ruling that he lacked authority to review those standards.

Rogers asserts that his performance standards were invalid because they did not inform him of what was necessary to achieve a satisfactory or acceptable rating and because they required absolute compliance. He also contends that the arbitrator's failure to review his standards cannot be considered "harmless error."

■ In cases challenging the reasonableness and objectivity of performance standards, this court independently determines whether the standards adequately comply with the statute. *See, e.g., De-Pauw v. United States International Trade Commission,* 782 F.2d 1564 (Fed. Cir.1986); *Adkins v. Department of Housing and Urban Development,* 781 F.2d 891 (Fed.Cir.1986); *Wilson,* 770 F.2d at 1055–56. Although the standards by which Rogers was evaluated did require some subjective evaluation, they were "sufficiently objective and precise in the sense that most people [would] understand what they mean[t] and what they require[d]...." *Wilson,* 770 F.2d at 1055. In any event, they were "fleshed out and implemented in detail" during the improvement period by Matthys' meetings with, and numerous written instructions to, Rogers. *Id.* at 1056.

Rogers' argument that the standards were invalid because they required absolute compliance is without merit. The agency clearly applied the standards in a flexible manner, as, for example, by allowing Rogers to develop his own grading system, so long as the factors and symbols used therein were adequately explained and the end result complied with established guidelines. Moreover, Rogers could have demonstrated superior performance by the quality of the course outlines, lesson plans, and grading system he submitted.

Since we conclude that the performance standards were adequate to comply with the statute, Rogers was not harmed by the failure of the arbitrator to review them.

■ B. Rogers next contends that the arbitrator erred by sustaining his removal on the basis of performance deficiencies that he asserts were corrected during the improvement period. A review of the record and of the arbitrator's lengthy and detailed opinion shows that his decision was based upon findings that Rogers failed to correct his performance deficiencies in a timely manner after being informed of the specific areas in which his performance was deficient. On this record we must conclude that the arbitrator's findings that the performance standards were not met during the improvement period are supported by substantial evidence.

Rogers testified that he provided revised course outlines and a further explanation of his grading for classroom participation on January 10, 1983, prior to the expiration of the improvement period on January 31, 1983. In her testimony, Matthys denied receiving these documents. Moreover, on class evaluation forms dated January 17 and January 25, 1983, Matthys notified Rogers that she had yet to receive the requested explanation and clarification of his grading system. The arbitrator declined to credit Rogers' testimony and found instead that he did not comply with the requests for these materials until after the expiration of the improvement period. This credibility determination with respect

to Rogers' testimony was within the discretion of the arbitrator and is virtually unreviewable on appeal. *Hambsch v. Department of the Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986). Although the evidence shows that Rogers commenced providing written lesson plans during the improvement period, rather than merely underlining a textbook as was his previous practice, he frequently failed to coordinate them with the course outlines or follow them in his class presentations. Finally, the arbitrator noted that while he viewed the deficient course outlines, standing alone, as insufficient to hold that Rogers failed to meet the standard, this error in conjunction with their late submission and the further delay in completing them caused him to conclude that this performance standard had not been met.

■ C. Relying upon *Adkins,* 781 F.2d at 895, Rogers argues that when an agency removes an employee for unacceptable performance on fewer than all the components of a critical job element it must prove that the employee's performance as a whole warranted an unacceptable rating. He notes that he was charged with failure to meet only one out of six components of one element and two out of four components of another element.

In *Adkins* this court indicated that an agency could satisfy its burden of proof by showing that an employee's unacceptable performance on fewer than all the components or subelements of a critical job element warranted an unacceptable rating on the critical element as a whole by submitting, *inter alia,* (1) evidence that the employee knew or should have known the significance of the subelements at issue and (2) evidence showing the importance of the subelements in relation to the duties and responsibilities with which the critical element as a whole is concerned. *Adkins,* 781 F.2d at 895.

The warning letter issued to Rogers on December 6, 1982 placed him on notice of the importance of developing an acceptable written grading system and course outlines and of correlating his lesson plans and classroom activities with the outlines. In addition, Matthys and Hill testified as to the importance of these subelements. Ac-

cordingly, we conclude that substantial evidence supports the arbitrator's ruling that Rogers' performance deficiencies with respect to the components or subelements at issue were of sufficient importance to cause him to fail to meet requirements of the two critical job elements.

■ D. Rogers maintains that the arbitrator's entire decision is flawed by the use of an improper evidentiary standard. In a ruling on the admissibility of certain evidence at the arbitration hearing, the arbitrator stated that "substantial evidence to me is any evidence which is other than arbitrary, capricious, or discriminatory, and there is no quantum beyond that." On the basis of this remark, Rogers contends that his entire case has been tainted and should be dismissed.

We are convinced that the arbitrator's remark related solely to his ruling on the admissibility of specific testimony. A review of his lengthy and detailed opinion convincingly shows that the arbitrator required the agency to produce "that degree of relevant evidence which a reasonable mind, considering the record as a whole, might accept as adequate to support a conclusion that the matter asserted is true," 5 C.F.R. § 1201.56(c)(1). *See Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938); *SSIH Equipment S.A. v. U.S. International Trade Commission,* 718 F.2d 365, 380 (Fed.Cir. 1983). We thus find this isolated, erroneous statement made in the course of an extensive hearing to be harmless error which was not prejudicial to the petitioner.

E. Finally, with respect to his claims of disparate treatment and reprisal, Rogers contends that the arbitrator applied the wrong legal tests.

■ This court and the Merit Systems Protection Board have held that it is inappropriate to consider mitigating factors, such as disparate treatment, in cases involving chapter 43 actions. *Lisiecki,* 769 F.2d at 1568; *Buggie v. Department of Health and Human Services,* 27 M.S.P.R. 109, 111 (1985). Even if other teachers had deficiencies in their lesson plans or grading

system, as the arbitrator's findings indicate, there was no evidence that Matthys was aware of any other teachers under her supervision being deficient. Disparate treatment requires that employees knowingly be treated differently. Furthermore, mere unevenness in the application of a penalty is not a reason in itself for invalidating the penalty. *Schapansky v. Department of Transportation, FAA,* 735 F.2d 477, 484 (Fed.Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).

■ We also reject Rogers' claim of reprisal. Under 5 U.S.C. § 7701(c)(2)(B), the burden was on Rogers to prove the affirmative defense of a prohibited personnel practice by a preponderance of the evidence. To prevail, he had to demonstrate that (1) he engaged in an activity protected under 5 U.S.C. § 2302(b), (2) the official accused of taking or recommending the retaliatory action had actual or constructive knowledge of the protected activity, (3) an adverse action resulted which under the circumstances could have been viewed as retaliatory, and (4) there was a genuine nexus between the retaliation and the adverse action, i.e., the independent grounds for the adverse action did not outweigh the retaliatory motive. *Warren,* 804 F.2d at 658; *Hagmeyer v. Department of the Treasury,* 757 F.2d 1281, 1284 (Fed.Cir. 1985). While Rogers presented some evidence which might justify an inference of a retaliatory motive, our review of the record and the arbitrator's opinion persuades us that the arbitrator carefully weighed the intensity of the retaliatory motive against the inadequacy of Rogers' performance of his duties and properly concluded on the basis of substantial evidence that Rogers' removal was based upon legitimate employment considerations. *See Warren,* 804 F.2d at 658; *Hambsch,* 796 F.2d at 436.

## CONCLUSION

Accordingly, we hold that the decision of the arbitrator is supported by substantial evidence and is not arbitrary, capricious, contrary to law, or an abuse of discretion.

AFFIRMED.