Florence SLOANE, Petitioner,

v.

DEFENSE LOGISTICS
AGENCY, Respondent.

Appeal No. 87–3328.

United States Court of Appeals,
Federal Circuit.

Dec. 3, 1987.

Harry D. Shargel, Philadelphia, Pa., argued for petitioner.

Eric L. Miller, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Asst. Director. Also on the brief was Molly Houghton Colburn, Asst. Counsel, Defense Personnel Support Center, of Philadelphia, Pa., of counsel.

Before MARKEY, Chief Judge,
FRIEDMAN and RICH, Circuit Judges.

RICH, Circuit Judge.

Petitioner Sloane appeals from an arbitration award sustaining her demotion from General Supply Specialist, GS–9, step 5, with the Defense Logistics Agency (agency), to Supply Technician, GS–7, step 10, for unacceptable performance. We affirm.

## Background

In 1984, as part of a departmental reorganization, the agency revised the job description for Sloane's position. The agency determined that to maintain a grade 9 lev-

el, employees occupying the position of General Supply Specialist would have to conduct studies of the supply flow from source to user. These studies demanded a certain level of mathematical and statistical competence and analytical ability which had not been required before. The new requirements were set forth as Critical Job Element 1 of the performance standards for the position. They became effective in June, 1985.

After substantial training, Sloane was unable to meet the new performance standards. The agency warned her and gave her 90 days to improve. The warning letter cited her performance with respect to a study she had done (Critical Job Element 1) and also processing certain requisitions (Critical Job Element 2). During the 90-day period, Sloane revised the study referenced in the warning letter and also did a second study. The agency reviewed her work and decided that she still did not meet the minimum performance standards. The agency then demoted her to GS–7.

Rather than appeal to the Merit Systems Protection Board (MSPB), Sloane elected to proceed under the union's negotiated grievance procedure. An arbitration hearing was held on November 17, 1986. With respect to critical element 2, i.e., processing requisitions, the arbitrator found that the agency had not met its burden of proof. The arbitrator sustained the agency, however, with respect to element 1. He found that Sloane's work had improved but was still deficient. Thus, the arbitrator determined that the demotion was proper.

## OPINION

### 1. *Standard of Review*

An appeal from an arbitrator's decision is governed by the same standard of review that applies to an appeal from a decision of the MSPB. 5 U.S.C. § 7121(f); *Rogers v. Department of Defense Dependents Schools*, 814 F.2d 1549, 1552 (Fed.Cir.1987). The court must affirm the decision unless it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evi-

dence, or otherwise not in accordance with law. 5 U.S.C. § 7703(c). *Id.*

### 2. *OPM Approval of the Agency's Performance Appraisal System*

Sloane argues that the arbitrator's decision should be reversed because he failed to find that the agency acted under an OPM-approved appraisal system. The MSPB has held that an agency taking performance-based action under Chapter 43, 5 U.S.C. § 4301 *et seq.*, must establish that its performance appraisal system has been approved by the Office of Personnel Management (OPM). *E.g., Griffin v. Department of Army*, 23 M.S.P.R. 657, 661–62 (1984); *Robinson v. Department of Health and Human Services*, 30 M.S.P.R. 389, 398 (1986).

In its brief, the government points out that there was no need for the arbitrator to find that there was an OPM-approved system because both parties *stipulated* to that fact. The stipulation was oral and there is no transcript of the hearing. The arbitrator's certified list of docket entries, however, describes Joint Exhibit # 1 as "Chapter 43 Performance Appraisal and associated documents including as stipulated by the parties the Agency Performance Appraisal Plan as Approved by the Office of Personnel Management." Attached to the certified list submitted to the court was a letter from the arbitrator to the Department of Justice which states, "[T]he parties stipulated the acceptance by the parties [sic] of the Agency Performance Appraisal as approved by O.P.M."

At oral argument, Sloane's counsel told the court that he had not represented Sloane at the arbitration hearing and did not know of any stipulation. It was his position, however, that because it was not in the record, there was no stipulation.

To resolve the matter, the court ordered counsel for both parties to produce affidavits setting forth whether the performance appraisal system under which Sloane was evaluated was approved by OPM and whether the fact of approval by OPM was stipulated to by the parties before the arbi-

trator.* The government submitted an affidavit of the agency representative at the arbitration hearing. In it, she swore that she and petitioner's representative had stipulated, at the opening of the hearing, to OPM approval of the agency performance appraisal system and that they had orally advised the arbitrator of the stipulation. Attached was a Defense Logistics Agency memorandum dated June 18, 1981, addressed to DLA heads of Field Activities, stating that the agency's performance appraisal plan was OPM-approved. Counsel for Sloane submitted no affidavit.

We are satisfied that the parties stipulated to OPM approval of the agency's appraisal system and thus Sloane's argument is without merit. In proceedings before the MSPB, parties may stipulate to any matter of fact and such a stipulation will satisfy the burden of proof as to that fact. 5 CFR 1201.66. There is no reason why it should be any different for arbitration.

We also recognize that verbatim records of arbitration hearings are usually not available, see Devine v. Goodstein, 669 F.2d 736, 737 (D.C.Cir.1981), leaving the door open to arguments such as this. It is, of course, desirable that where, as here, the hearing is not recorded, counsel should submit their stipulations in writing and thus avoid having to relitigate issues already settled.

### 3. Other Arguments

■ Sloane advances several other grounds for reversing the arbitrator's decision. These arguments are contrary to the evidence of record and wholly without merit.

Sloane argues that the arbitrator did not sustain the specific instances of unacceptable performance relied on by the agency and thus should not have sustained her demotion. This is simply incorrect. The arbitrator disagreed in part with the deciding official that the second study was a duplication of another's work and recognized that the study showed *some* analysis.

But the arbitrator still found that the second study, like the first one, was inadequate. In particular, the arbitrator found that the second study showed Sloane did not understand the use of statistics and graphs which were a major part of the required anaylsis. Given these findings, it is misleading for Sloane to suggest that the arbitrator found her second study "complied with the standards for Critical Element 1."

Sloane also would fault the arbitrator for finding that her performance had improved during the warning period, but then erred in improperly "averaging" the improvement with her pre-warning poor performance. What little support there is for this point is confused. The *agency* had averaged her performance over a seven-month period in evaluating her under critical element 2. The arbitrator, however, sustained the demotion based solely on element 1. Unacceptable performance may be based on failure to meet established standards in only *one* critical element of the position. See 5 U.S.C. § 4301(3).

Sloane's next argument, that the agency officials illegally considered an "outdated" warning letter, is confused and misleading, and in any event irrelevant. The agency's decision to demote Sloane specifically states that it was based on her current performance and that only her current performance could be considered. While the record reflects that a warning letter dated August 5, 1983, was introduced at the hearing, nothing in the record suggests that the arbitrator relied on it. The arbitrator sustained the demotion based on critical element 1 which was not part of the performance standards until June, 1985, and any earlier warnings were obviously irrelevant.

■ Sloane further argues that the agency did not consider her for reassignment before proposing to demote her as mandated by the union agreement. The arbitrator found, however, that "in accordance with established procedures," Sloane

---

* Although this is unusual, the court has previously considered affidavits regarding the content of a disputed oral stipulation. *See Syntex Ophthal-* *mics, Inc. v. Novicky,* 795 F.2d 983, 986 n. 9 (Fed.Cir.1986).

met with the acting chief of her division "to review the possibility of a lateral transfer." Sloane was "given an opportunity to bid on a lateral transfer, which she did not obtain, and was offered a GS–8 position which she refused." Sloane's argument that this was not adequate "consideration" is without merit. Furthermore, the fact that the arbitrator's opinion is silent on when these events took place relative to the proposed removal is not grounds for reversal. Even if Sloane had shown that the agency made a procedural error in the timing of her consideration for reassignment, she still had the burden to raise and prove substantial prejudice flowing from the error, which she has not done. *See Smith v. United States Postal Service,* 789 F.2d 1540, 1545–46 (Fed.Cir.1986).

## CONCLUSION

Accordingly, we *affirm* the arbitrator's decision because it was not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law.

AFFIRMED.