## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

VINCENT M. RISTER,

        Appellant,

    v.

DEPARTMENT OF AGRICULTURE,

        Agency.

DOCKET NUMBER
AT-0432-20-0614-I-1

DATE:  January 15, 2025

# THIS ORDER IS NONPRECEDENTIAL[1]

Jesse L. Kelly II, Esquire, and Shaun Southworth, Esquire,
    Atlanta, Georgia, for the appellant.

Lori A. Ittner, Silas Elwood York, Jr., and Patricia McNamee,
    Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained his performance-based removal.  For the reasons discussed below, we GRANT the petition for review, VACATE the initial decision, and REMAND the

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order and *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

**BACKGROUND**

Unless otherwise indicated, the following facts are not in dispute. The appellant was employed as a Plant Protection Quarantine Technician with the agency. Initial Appeal File (IAF), Tab 6 at 21. In that role, he assisted the agency's mission to detect and exclude fruit flies from the United States by setting traps to catch fruit flies, checking those traps, identifying target fruit flies, and submitting those flies to a lab for identification. IAF, Tab 52, Hearing Recording (HR) (testimony of the appellant's supervisor). Between April 22 and October 24, 2019, the appellant met with his supervisor three times for quarterly performance reviews to discuss several performance deficiencies such as, among other things, projects, surveys, and assessments not being completed within a reasonable amount of time, a lack of responsiveness to requests for information or corrective action, and the submission of paperwork with errors. IAF, Tab 6 at 91.

As a result, on December 2, 2019, the agency placed the appellant on a Demonstration Opportunity (DO), which is the agency's version of a performance improvement plan (PIP). IAF, Tab 6 at 91-93. The DO notice explained that the agency had determined that the appellant's performance was at an unacceptable level in two critical elements: Critical Element 1—Survey and EEO Civil Rights (Mission Results); and Critical Element 3—Communication/Customer Service. *Id.* at 91. Under Critical Element 1, the DO required, among other things, that all trap line evaluations be satisfactory and that two Fruit Fly Detection (FFD) reports be conducted with a score of 305 or higher. *Id.* at 92. It also required the appellant to report weekly on the progress of the route book assessment; to conduct all surveys, duties, and responsibilities as assigned; and to maintain and

address the corrective action report no later than 10 business days after receipt.[2] *Id.* Under Critical Element 3, the DO required the appellant to meet and deal with others and to "communicate[] program purpose of activities in a manner which ensures equal access to program and information." *Id.* The DO provided the appellant with 60 days to demonstrate acceptable performance in those critical elements and informed him that failing to bring his performance to an acceptable level could result in, among other actions, removal from Federal service. *Id.* at 91-92.

On April 7, 2020, following the completion of the DO, the agency informed the appellant that his performance did not reach the "Fully Successful" level,[3] and it proposed his removal. IAF, Tab 6 at 73-76. Regarding Critical Element 1, the agency concluded that the appellant failed to receive a passing score on either FFD report. *Id.* at 74. It also concluded that, in two instances, the appellant failed to submit a completed corrective action report by the required deadline. *Id.* For Critical Element 3, the agency stated that the appellant failed to sign out of the office indicating that he would be in the field on three dates during a single week and that he did not attend December's monthly meeting with his supervisor. *Id.* at 74-75. The appellant provided an oral reply to the proposed removal, but on May 21, 2020, the Acting State Plant Health Director sustained the proposal and removed the appellant, pursuant to chapter 43, effective May 23, 2020. *Id.* at 22-25.

The appellant filed a Board appeal, arguing that his supervisor illegally recorded his conversations and that the agency discriminated against him due to

---

[2] Discrepancies identified in the FFD reports form the basis for a corrective action report. HR (testimony of the appellant's supervisor). This critical element concerns the quality and timeliness of both the FFD reports and the subsequent corrective action reports addressing any discrepancies in the FFD reports.

[3] The agency's appraisal system has two performance levels: "Fully Successful" and "Exceeds Fully Successful." IAF, Tab 42 at 75. Thus, the appellant did not meet the lowest acceptable performance level during the DO.

his age. IAF, Tab 1, Tab 4 at 3. He also asserted that he was not given a reasonable opportunity to improve because the standards set forth in the DO with respect to the first subelement of Critical Element 1, which concerns the FFD reports, differed from those set forth in his fiscal year (FY) 2020 performance plan. IAF, Tab 53 at 4-5. Specifically, he argued that the DO required that all of his FFD reports be satisfactory, but his FY 20 performance plan required only a minimum average score of 305 points. *Id.* Similarly, he argued that the FY 20 performance plan, requiring a minimum average score of 305 points for FFD reports, had been switched from the FY 19 performance plan, which, like the DO, required that all FFD reports be satisfactory. *Id.* at 5. He further argued that he did not have enough time to demonstrate acceptable performance under the new FY 20 standard prior to being placed on the DO. *Id.*

After holding the appellant's requested hearing, IAF, Tab 4 at 2; HR, the administrative judge issued an initial decision sustaining the appellant's removal, IAF, Tab 55, Initial Decision (ID). In so doing, he found that the agency met all of the elements of a chapter 43 performance-based action. ID at 5-12. He specifically concluded that he did not need to determine whether the agency impermissibly changed the first subelement in Critical Element 1 (which concerns the scoring of the FFD reports) because he otherwise concluded that the agency proved that the appellant's performance under the third subelement (which concerns, among other things, the timeliness of corrective action report submissions) was unacceptable. ID at 6-9. Additionally, the administrative judge found that the appellant failed to carry his burden with respect to his affirmative defense of age discrimination. ID at 12-15.

The appellant has filed a petition for review, wherein he renews his argument regarding apparent changes to subelement 1 of Critical Element 1 and his opportunity to improve in that subelement. Petition for Review (PFR) File, Tab 1 at 5-7. The agency has filed a response. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

As noted above, consistent with the decision of the U.S. Court of Appeals for the Federal Circuit in *Santos*, 990 F.3d at 1360-63, we are remanding this appeal for further adjudication. In *Santos*, the court held for the first time that, in addition to the elements of a chapter 43 case set forth by the administrative judge and discussed below, an agency also must show that the initiation of a PIP was justified by the appellant's unacceptable performance before the PIP. *Id.* Prior to addressing the remand, however, we address the administrative judge's findings on the elements of a chapter 43 appeal as they existed at the time of the initial decision.

At the time the initial decision was issued, the Board's case law stated that, in a performance-based action under 5 U.S.C. chapter 43, an agency must establish by substantial evidence that: (1) the Office of Personnel Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013).

The administrative judge addressed each of these criterion in turn and found that the agency carried its burden on all of them with respect to Critical Element 1.[4] ID at 5-12. Regarding the first criterion, the administrative judge

---

[4] Because the administrative judge found that the agency proved that the appellant's performance was unacceptable in Critical Element 1, he did not substantively discuss Critical Element 3 . ID at 4-5. Given the applicable law at the time of the initial decision, we discern no immediate error in this decision. *See White*, 120 M.S.P.R. 405, ¶ 5. However, as discussed further in our remand instructions below, should the agency fail to prove that the appellant's performance under Critical Element 1 was unacceptable prior to his placement on the DO pursuant to *Santos*, the administrative judge should revisit his discussion of Critical Element 3 and undertake the relevant analysis of that critical element. *See infra* p. 11.

observed that it was undisputed that the agency's performance appraisal system was approved by OPM, and the record further contains uncontroverted evidence of that fact.  ID at 5; IAF, Tab 26 at 8-14.  The administrative judge further stated that it was undisputed that the appellant received his FY 20 performance plan prior to being placed on the DO, and the record includes that performance plan, which was signed by the appellant on a date prior to the DO.  ID at 5; IAF, Tab 6 at 80-90.  In discussing whether the appellant was warned of his performance inadequacies, the administrative judge relied on the language of the DO to conclude that the agency established by substantial evidence that it advised the appellant that his performance was unacceptable, warned him of his performance inadequacies, and informed him of what he would need to do to bring his performance to an acceptable level.  ID at 9-10.  The appellant has not disputed any of these findings.  PFR File, Tab 1.

As set forth previously, the administrative judge concluded that, because the agency met its burden with respect to the third subelement under Critical Element 1, which required the appellant to timely submit corrective action reports, he did not need to resolve the purportedly different standards of the FY 20 performance plan and the DO with respect to the first subelement.  ID at 6 (citing *Rogers v. Department of Defense Dependents Schools*, 814 F.2d 1549, 1554 (Fed. Cir. 1987) (reiterating that an agency can satisfy its burden of proof by showing that an employee's unacceptable performance on fewer than all the components or subelements of a critical job element warranted an unacceptable rating on the critical element as a whole)).  The administrative judge proceeded to analyze the appellant's chapter 43 removal with a focus on subelement 3 of Critical Element 1.  ID at 6-12.

The administrative judge observed that the Board has held that "[g]enerally, performance standards must, 'to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria,' and must be 'reasonable, realistic, attainable[,] and clearly stated in writing.'"  ID at 6

(quoting 5 U.S.C. § 4302(c)(1) and *Benton v. Veterans Administration*, 37 M.S.P.R. 284, 286 (1988)). The administrative judge also observed that the Board has held that "[p]erformance standards should be specific enough to provide an employee with a 'firm benchmark' toward which to aim his performance." ID at 6 (quoting *Smith v. Department of Energy*, 49 M.S.P.R. 110, 116 (1991)). In applying these principles, the administrative judge concluded that subelement 3 was a valid standard because it was objective, in that the appellant either corrected any inaccuracy in a corrective action report or he did not, and because it provided him with a "firm benchmark to aim his performance for timeliness because it unequivocally requires [him] to 'address the corrective action report no later than ten business days after receipt.'" ID at 6, 8.

Regarding the appellant's opportunity to improve, the administrative judge explained that the appellant did not argue that, for the third subelement of Critical Element 1, the 60-day DO was an inadequate time to improve, and he stated that "a reasonable person could conclude that 60 days was adequate." ID at 10. Therefore, he found that the agency provided the appellant with a reasonable opportunity to improve. ID at 10. We agree. The Board has found that 60 days is a sufficient period of time for an opportunity to improve. *See Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 33 (2010). Accordingly, we discern no basis to disturb the administrative judge's finding in this regard.

Regarding the appellant's performance in the third subelement of Critical Element 1, the administrative judge considered testimony from the appellant's first-level supervisor, who stated that the appellant failed to complete his first corrective action report by the required deadline, that an extension of time was not approved, and that the corrective action report had multiple items that were not adequately addressed. ID at 11; HR (testimony of the appellant's supervisor). With respect to the second corrective action report, the administrative judge considered evidence that the appellant had requested and received a 1-day extension but failed to submit the report by that deadline, and that the report

contained six line items that were not adequately addressed. ID at 11; IAF, Tab 6 at 74, Tab 42 at 55-61. Accordingly, the administrative judge found that the agency proved by substantial evidence that the appellant failed to meet the timeliness standard included in subelement 3 of Critical Element 1 and failed to address multiple line items on those corrective action reports. ID at 12. He further stated that he was "of the firm conviction that the appellant's performance for subelement 3, [Critical Element 1] was, in fact, unsatisfactory." ID at 12. Because the DO required the appellant to satisfactorily complete all of the subelements of each critical element, the administrative judge found that the appellant's failure in that subelement was adequate to find that the appellant failed Critical Element 1 and the DO in its entirety. *Id.*

These findings are supported by the record, and the appellant does not challenge them on petition for review. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same); *see also* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely-filed petition or cross-petition for review."). Rather, as explained above, the appellant's petition for review reiterates his argument from below that the agency impermissibly changed the performance standards from his FY 20 performance plan to the DO with respect to the first subelement of Critical Element 1. PFR File, Tab 1. We address this issue below.

<u>The administrative judge did not err in declining to resolve the appellant's challenge to the standard set forth in subelement 1 of Critical Element 1.</u>

We agree with the administrative judge that it was unnecessary to reach the appellant's challenge to the first subelement of Critical Element 1. ID at 6. The Board has stated that an agency need not show that an employee's performance was unacceptable on a majority of subelements to prove unacceptable

performance on the critical element as a whole. *See Lee*, 115 M.S.P.R. 533, ¶ 37. Rather, as the administrative judge correctly noted, an agency can satisfy its burden of showing that an employee's performance on fewer than all of the components or subelements of a critical element still warranted an unacceptable rating on the critical element as a whole if it can provide evidence of the following: (1) the employee knew or should have known the significance of the subelement; and (2) the importance of the component or subelement in relation to the duties or responsibilities of the critical element as a whole. *See Rogers*, 814 F.2d at 1554.

The administrative judge observed that Critical Element 1 for the appellant's FY 20 performance plan contained approximately 16 subelements and that the DO isolated 3 of those 16. ID at 7. He found that the agency thereby placed the appellant on notice of which subelements it considered important in passing Critical Element 1 in its entirety. *Id.* Additionally, the administrative judge found that the standard set forth in subelement 3 of Critical Element 1 is "tailored to the specific requirements of [the appellant's] position because, if either he or whoever is using his report to locate a trap cannot do so because of [an] inaccuracy, the agency's mission to eradicate fruit flies suffers." ID at 8-9. Thus, although not explicitly stating so, the administrative judge concluded impliedly that the agency met the factors set forth in *Rogers*. ID at 6-9. On review, the appellant does not argue that he did not know that subelement 3 was significant to the overall performance of Critical Element 1, nor does he claim that subelement 3 is not sufficiently related to the overall duties and responsibilities with which Critical Element 1, as a whole, is concerned. PFR File, Tab 1.

We have reviewed the record, and we agree with the administrative judge that the appellant was aware of the importance of subelement 3 of Critical Element 1. In addition to the DO's focus on the 3 out of 16 subelements, the record reflects that a point of focus in the meetings leading up to the appellant's

placement on the DO was his responsiveness to requests for corrective action. IAF, Tab 6 at 91. We also agree that subelement 3 is germane to the overall performance of the critical element because, as the administrative judge concluded, providing correct information in his reports is necessary to enable the agency to carry out its mission of detecting and excluding fruit flies from the United States. Therefore, we agree that the agency did not need to prove that the appellant failed to achieve acceptable performance in all subelements of Critical Element 1, and that unacceptable performance in subelement 3 was sufficient to conclude that the appellant's performance in that critical element was unacceptable. *See Wallace v. Department of the Air Force*, 879 F.2d 829, 834 (Fed. Cir. 1989) (recognizing that an appellant's failure to meet a single component of one critical element may be sufficient to justify removal for unacceptable performance); *Rogers*, 814 F.2d at 1554 (finding that an unsatisfactory performance on one of six components of one critical element and two of four components of another warranted an unacceptable rating on both critical elements); *Lee*, 115 M.S.P.R. 533, ¶ 37 (finding that unsatisfactory performance in two of six components of one critical element warranted an unacceptable rating in that element). For these reasons, regardless of the merits of the appellant's argument that the agency impermissibly changed the standard for the first subelement of Critical Element 1, we nonetheless agree with the administrative judge that the agency met its burden under *White* with respect to the third subelement of Critical Element 1, as set forth above.

Remove is necessary to afford the parties an opportunity to submit evidence and argument regarding whether the appellant's placement on a PIP was proper.

Although the appellant has identified no basis for us to disturb the administrative judge's findings below, we nonetheless must remand this appeal for another reason. As noted, during the pendency of the petition for review, the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, that, in addition to the five elements of the agency's case set forth above, the agency must also justify the

institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Although the record already contains some evidence on this issue, the parties were not notified that it would be material to the adjudication, and thus, they have not had a full and fair opportunity to address it. We therefore remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the DO was unacceptable in one or more critical elements. *See Lee*, 2022 MSPB 11, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id.* If the agency makes the additional showing required under *Santos* on remand that the appellant's performance in Critical Element 1 was at an unacceptable level prior to his placement on the DO, the administrative judge may incorporate his prior findings on the other elements of the agency's case and the appellant's affirmative defense[5] in the remand initial decision. *See id.* However, if the agency fails to show that the appellant's performance was at an unacceptable level for Critical Element 1 prior to his placement on the DO, the administrative judge should consider whether the agency met its burden of proof in a chapter 43 performance-based removal appeal under *Santos* with respect to Critical Element 3. Regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-DO performance

---

[5] As noted above, the appellant alleged that he was discriminated against based on his age. IAF, Tab 4 at 3. The administrative judge found that the appellant failed to prove that his age was a motivating factor in his removal, ID at 13-14, and the appellant does not contest this finding on review. As explained above, however, to the extent that any further evidence or argument on remand affects the discrimination analysis, the administrative judge should address it in the remand initial decision.

affects the administrative judge's analysis of the appellant's affirmative defense, he should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

For the reasons discussed above, we remand this case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                   _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.