**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

SHEILA JOSHALYN WILLIAMS,
              Appellant,

        v.

DEPARTMENT OF HEALTH AND
    HUMAN SERVICES,
              Agency.

DOCKET NUMBER
DC-0752-16-0558-I-1

DATE: February 24, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jason I. Weisbrot, Esquire, and Justin Womack, Baltimore, Maryland, for
    the appellant.

Alexis S. Conway, Baton Rouge, Louisiana, for the agency.

Katherine A. Goetzl and Reynolds Wilson, Esquire, Washington, D.C., for
    the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt issues a separate dissenting opinion.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER**

¶1          The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision, which sustained both specifications of the charge of unprofessional conduct, found that the appellant did not prove any of her affirmative defenses, and reversed the agency's removal action because the agency did not prove a nexus between the misconduct and the efficiency of the service. For the following reasons, we GRANT the petition for review and the cross petition for review. We AFFIRM the administrative judge's decision to sustain both specifications of the unprofessional conduct charge and her finding that the appellant did not prove any of her affirmative defenses. We REVERSE the administrative judge's finding that the agency did not prove nexus. We MITIGATE the removal penalty to a 14-day suspension.

**BACKGROUND**

¶2          The agency removed the appellant, an Investigations Analyst, based on a charge of unprofessional conduct stemming from her behavior during an August 19, 2015 incident in the Equal Employment Opportunity Compliance and Operations (EEOCO) Division. Initial Appeal File (IAF), Tab 6 at 39-47, Tab 7 at 53-58. She appealed to the Board and, after a hearing, the administrative judge issued an initial decision reversing the removal. IAF, Tab 34, Initial Decision (ID) at 1, 19. The administrative judge found that the agency proved both specifications of its charge. ID at 7-10. She also concluded that the appellant did not prove her affirmative defenses of disability discrimination and reprisal for equal employment opportunity (EEO) activity. ID at 14-19. However, the administrative judge reversed the removal action because the agency did not prove a nexus between the removal and the efficiency of the service. ID at 10-13.

¶3          The agency has filed a petition for review, the appellant has filed a response, and the agency has filed a reply brief. Petition for Review (PFR) File, Tabs 4, 9, 14. The appellant's response not only opposes the agency's petition

for review but also challenges the administrative judge's analysis of the charge and her exclusion of purported comparator evidence. PFR File, Tab 9 at 19 & n.5, 25 & n.8. Therefore, we have construed it also as a cross petition for review. PFR File, Tab 11. The agency has filed a response to the appellant's cross petition for review. PFR File, Tab 15.

## ANALYSIS

¶4 An agency must establish the following three things to withstand a challenge to an adverse action against an employee pursuant to 5 U.S.C. chapter 75: (1) it must prove by a preponderance of the evidence[2] that the charged conduct occurred; (2) it must establish a nexus between that conduct and the efficiency of the service; and (3) it must demonstrate that the penalty imposed is reasonable. 5 U.S.C. §§ 7513(a), 7701(c)(1)(B); *Malloy v. U.S. Postal Service*, 578 F.3d 1351, 1356 (Fed. Cir. 2009); *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). For the following reasons, we find that the agency has satisfied its burden regarding the charge and nexus but not the penalty.

The agency proved both specifications of the unprofessional conduct charge.

¶5 In the proposal notice, the agency alleged that the appellant had a meeting with her first-line supervisor and another employee on August 19, 2015, and she was advised during this meeting that the agency had denied her reasonable accommodation request based upon the determination of a Federal Occupational Health Service (FOH) expert. IAF, Tab 7 at 53. The agency further alleged that the appellant had asked for a copy of the FOH determination, and her first-line supervisor told her that she would ask the Reasonable Accommodations Coordinator for the requested information. *Id.* at 53-54. In pertinent part, the agency alleged that the appellant left her office, went to the EEOCO Division,

---

[2] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

and engaged in unprofessional conduct by (1) screaming in the hallway of the EEOCO Division, which caused a "significant disruption at the workplace," and (2) "angrily flail[ing] [her] arms around and hit[ting] [the Reasonable Accommodations Coordinator] on her arm." *Id.* at 54-55. The agency further alleged that employees in the EEOCO Division called security as a result of the appellant's "violent meltdown," which included her crying, yelling, flailing, and balling her hands into fists. *Id.* The administrative judge made credibility determinations and found that the agency proved that the misconduct occurred and that the misconduct constituted unprofessional conduct. ID at 7-10.

¶6      In her cross petition for review, the appellant contends that the administrative judge improperly sustained the charge, but we are not persuaded by this argument. PFR File, Tab 9 at 19 n.5.[3] For instance, we have considered the appellant's assertion that the Board should find that her conduct was not unprofessional because it occurred in the EEOCO Division. *Id.* (discussing *Daigle v. Department of Veterans Affairs*, 84 M.S.P.R. 625 (1999)). In *Daigle*, 84 M.S.P.R. 625, ¶¶ 2, 6, the Board found that a disrespectful conduct charge could not be sustained because, among other things, the appellant's use of abusive language about a manager occurred during an EEO counseling session. The Board explained that, because EEO counseling sessions are a semi-confidential means through which employees complain about other agency personnel and complainants are likely to be emotionally distraught when reporting perceived discrimination to the EEO counselor, it is reasonable to afford employees more leeway regarding their conduct in such a context than they might otherwise be

---

[3] We deny the appellant's request to file a reply to the agency's opposition to her cross petition for review. PFR File, Tab 17. A cross petition for review is expected to contain a party's complete legal and factual arguments, and the Board's regulations do not provide for a reply brief in such a situation or as a matter of right. *See* 5 C.F.R. § 1201.114(a)-(b). Moreover, we are not persuaded by the appellant's assertion that she should be able to file a reply brief because the agency's response to her cross petition for review contains new and material legal arguments. *See* 5 C.F.R. §§ 1201.114(a)-(b), (k), 1201.115(d).

afforded in other employment situations. *Id.*, ¶ 6. This case is distinguishable from *Daigle* in three important respects. First, by the appellant's own admission, she went to the EEOCO Division with the intention of obtaining a copy of the FOH determination, Hearing Transcript (HT) at 402-04 (testimony of the appellant), not to discuss specifically any of her EEO claims. Second, the appellant's conduct in this matter occurred in the hallway of the EEOCO Division, not in an office or other confidential or semi-confidential setting. Third, the appellant made unwanted physical contact with the Reasonable Accommodations Coordinator during her outburst in the EEOCO Division, which is not the type of conduct that might be expected even in a confidential EEO counseling session. *Cf. Daigle*, 84 M.S.P.R. 625, ¶ 6 (noting that employees could be expected to complain about other agency personnel in an EEO counseling session and that the appellant's abusive language was not directed at the counselor). Thus, we find that the appellant's conduct was unprofessional even though it occurred in the EEOCO Division. However, as we discuss in more detail below, *infra* ¶ 22, the context in which the appellant's misconduct occurred plays a significant role in assessing the reasonableness of the penalty under the particular circumstances of this case.

¶7        The appellant also asserts that her conduct did not "rise to the level of unprofessionalism" because she was "merely venting her frustrations about an EEO matter, her reasonable accommodation, and disability." PFR File, Tab 9 at 19 n.5. She asserts that she did not make a threat like the employee in *Berkner v. Department of Commerce*, 116 M.S.P.R. 277 (2011), who was removed for making inappropriate statements during a meeting with a union steward concerning her discrimination complaint. PFR File, Tab 9 at 19 n.5. We find her arguments unavailing. The administrative judge noted that it was undisputed that the appellant's outburst lasted at least 10 minutes, involved loud crying and lamentation, pouting, stomping, and waving her arms. ID at 9. The administrative judge made several credibility determinations, found that the

appellant screamed, and noted that she admitted gesturing with her arms and that she was "hysterical," which resulted in incidental contact with another employee's arm. ID at 9-10. She also found that the appellant's actions constituted unprofessional conduct. *Id.* The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not presented such sufficiently sound reasons. Further, we find nothing in *Berkner*, which upheld that employee's removal for inappropriate conduct, that precludes a finding of unprofessional conduct on the facts of this case. Accordingly, we affirm the administrative judge's decision to sustain both specifications of the unprofessional conduct charge.

The agency proved a nexus between the removal and the efficiency of the service.

¶8        Under 5 U.S.C. § 7513(a), an agency may remove an employee "only for such cause as will promote the efficiency of the service." The nexus requirement, for purposes of whether an agency has shown that its action promotes the efficiency of the service, means there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate Government interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 585, 596 (1981), *modified by Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n.2 (1987). An agency may show a nexus between off-duty[4] misconduct and the

---

[4] The administrative judge found that the appellant was on approved leave at the time of the incident. ID at 10. The agency on review does not concede that the appellant was off duty, PFR File, Tab 4 at 14 n.5, and her leave statements do not show that she was on approved leave on the date and time of the incident, IAF, Tab 19 at 62. However, the record reflects that the appellant sent an email to her first-line supervisor following the August 19, 2015 reasonable accommodation request meeting in which she stated

efficiency of the service by three means: (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission. *Kruger*, 32 M.S.P.R. at 74.

¶9    In the initial decision, the administrative judge found that the agency did not prove nexus under any of these methods. ID at 10-13. In pertinent part, the administrative judge found that the appellant's misconduct (1) was not so plainly egregious as to give rise to a presumption of nexus, (2) was not related to her job performance and did not affect her immediate coworkers in the Administrative and Policy office, (3) did not affect her supervisor's confidence in her performance, (4) did not interfere with the EEOCO Division's job performance or mission, and (5) did not interfere with or adversely affect the agency's mission. ID at 11-13. On review, the agency argues that the administrative judge erred when she determined that the appellant's unprofessional conduct did not adversely affect the agency's trust and confidence in her job performance, the job performance of the EEOCO Division employees, or the agency's mission.[5] PFR File, Tab 4 at 14-25.

¶10   We agree with the agency that it proved by preponderant evidence that it established nexus in this matter. Indeed, both the Board and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have held that misconduct that occurs on agency premises and involves agency personnel is sufficient to

---

that she was "not feeling well" and "should go home as soon as possible," and her first-line supervisor replied, "No problem," at about 11:40 a.m. IAF, Tab 7 at 59. Based on this email correspondence, we assume for the purposes of our analysis that the appellant was off duty during the incident in question, which occurred shortly after noon that day. *E.g.*, *id.* at 62-66.

[5] The agency does not contend on review that the administrative judge's other nexus findings were in error. We therefore affirm the administrative judge's findings in this regard.

establish nexus. For example, in *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987), the court held that there was a direct connection between the petitioner's misconduct and the efficiency of the service because the petitioner "admittedly aided and abetted the sale of drugs to another employee at that facility in a transaction that was arranged at least in part at work." In *Venson v. Department of the Air Force*, 10 M.S.P.R. 375, 377 (1982), *aff'd*, 706 F.2d 319 (Fed. Cir. 1983) (Table), the Board found and the Federal Circuit affirmed that nexus existed for the appellant's off-duty misconduct when the incident at issue took place on agency premises, involved the disruption of functions sponsored by the agency, and resulted in the use of agency personnel who had to deal with the appellant's misconduct. Similarly, in *Franks v. Department of the Air Force*, 22 M.S.P.R. 502, 504-05 (1984), the Board found that the agency proved nexus because the appellant's off-duty intoxication on agency premises presented a possible danger to others and involved the use of agency personnel for the purpose of dealing with his conduct. *See also Lowell v. Department of the Air Force*, 11 M.S.P.R. 453, 454-55 (1982) (finding nexus for off-duty misconduct when the appellant's actions occurred on agency property and required the use of the agency's security and investigations personnel).

¶11 The proposal notice, which was written by the appellant's first-line supervisor, explicitly stated that the August 19, 2015 incident, which "occurred at work during work hours in front of [her] . . . colleagues . . . negatively affect[ed] [the first-line supervisor's] trust and confidence in [the appellant's] job performance." IAF, Tab 7 at 57. In addition to disrupting the work of EEOCO Division employees, agency security was called in to deal with the appellant's behavior. HT at 219-225 (testimony of the Reasonable Accommodation Case Manager). As set forth above, the fact that the misconduct occurred on agency property and involved agency personnel is sufficient to establish nexus.

¶12 Moreover, the evidence clearly demonstrates that the deciding official, who was the appellant's third-level supervisor, HT at 325-26 (testimony of the

deciding official), also lost confidence in her ability to perform her duties after the incident in question. Importantly, the deciding official stated in the decision letter, and reaffirmed in his testimony, that he "lost trust in [the appellant's] ability to behave in a professional manner with [her] co-workers and other [agency] employees," the charge "directly relate[d] to the performance of [her] duties," and "directly relate[d] to [his] confidence that [the appellant] will be able to perform [her] assigned duties at a satisfactory level." IAF, Tab 6 at 41-43; HT at 337 (testimony of the deciding official). The deciding official explained that, "[a]s an Investigative Analyst, [the appellant was] expected to demonstrate professional characteristics in [her] dealings with co-workers and Regional and Headquarters staff." IAF, Tab 6 at 41.

¶13     The record supports the deciding official's conclusion in this regard. For example, the Investigations Analyst position description stated that assignments "involve exercising good judgment and tact in dealing with personnel." IAF, Tab 19 at 192. Moreover, the appellant's performance plan included a critical element of "collaborating with others." IAF, Tab 7 at 114-19. The agency described this critical element as, among other things, "[f]oster[ing] an organizational climate that reinforces treating others with professionalism, courtesy, [and] respect; is recognized at all levels as a model of professionalism and fairness." *Id.* at 117. The deciding official testified that the "collaborating with others" critical element "included any time that [an employee was] [acting as a liaison] or communicating with an entity." HT at 368 (testimony of the deciding official). Based on this evidence, we conclude that the agency proved by preponderant evidence that it lost trust and confidence in the appellant's job performance as a result of her misconduct on August 19, 2015. *See Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 9 (2010) (concluding that the agency proved nexus through the deciding official's declaration, which established that the appellant's conduct affected management's trust and confidence in his job performance); *Adams v. Defense Logistics Agency*, 63 M.S.P.R. 551, 555-56

(1994) (finding sufficient to establish nexus the deciding official's unchallenged testimony that the appellant's off-duty possession of marijuana adversely affected the agency's trust and confidence in his job performance). Therefore, nexus is established.

The appellant did not prove her affirmative defenses.

¶14    The administrative judge found that the appellant did not prove that her disability or EEO activity was a motivating factor in the agency's decision to remove her or that she proved her failure to accommodate claim. ID at 14-19. In her cross petition for review, the appellant does not challenge the administrative judge's findings regarding motivating factor or her conclusion that she did not prove her affirmative defenses. ID at 14-19. However, we will briefly address such claims in light of recent case law. Regarding her disparate treatment claim, her initial burden was to prove that her disability was a motivating factor in the removal action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 40. Because we discern no error with the administrative judge's motivating factor analysis or conclusion regarding this claim, we do not reach the question of whether her disability was a "but-for" cause of the removal action. *Id.*, ¶¶ 40, 42.

¶15    The appellant's prior EEO activity involved complaining of disability discrimination. IAF, Tab 17 at 49-53. Such activity is protected by the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act, the standards of which have been incorporated by reference into the Rehabilitation Act. 29 U.S.C. § 791(f); 42 U.S.C. § 12203(a); *Pridgen*, 2022 MSPB 31, ¶¶ 35, 44. This type of claim requires the appellant to prove "but-for" causation as her initial burden. *Pridgen*, 2022 MSPB 31, ¶¶ 46-47. Because we affirm the administrative judge's finding that she did not meet her initial burden to prove motivating factor, we also find that she would be unable to prove "but-for" causation.

The removal penalty is mitigated to a 14-day suspension.

¶16 Having found that the agency proved both specifications, the charge, and nexus, and that the appellant did not prove any affirmative defenses, we now turn to the penalty.[6] Before undertaking this review, we note that since the issuance of *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 284 (1981), over 40 years ago, the Board and the U.S. Court of Appeals for the Federal Circuit have held that the Board's statutory power includes the authority to modify or reduce a penalty imposed on an employee by an agency's adverse action. *See, e.g.*, *Mitchum v. Tennessee Valley Authority*, 756 F.2d 82, 84 (Fed. Cir. 1985) (requiring an administrative judge to ascertain whether the agency responsibly balanced the relevant factors in the individual case and selected a penalty within the tolerable limits of reasonableness); *Van Fossen v. Department of Housing and Urban Development*, 748 F.2d 1579, 1581 (Fed. Cir. 1984) (noting that the Board's failure to consider a significant mitigating circumstance constituted an abuse of discretion, and remanding for the Board to determine an appropriate lesser penalty). That authority is derived from 5 U.S.C. § 1205(a)(1), as enacted by the Civil Service Reform Act of 1978, which provides that the Board is authorized and directed to "take final action" on any matter within its jurisdiction. *Douglas*, 5 M.S.P.R. at 284, 296. Such authority is also consistent with the same broad authority that the former Civil Service Commission had, dating back to at least 1947, and that Congress wanted to "remain with the Board" upon its creation. *Id.* at 285-86, 290-94. Congress "clearly intended the Board to function in an independent, nonpartisan, quasi-judicial role," *id.* at 287, and exercise a "degree of independent discretionary judgment," *id.* at 298. In essence, and after briefing on the issue from a dozen Federal departments and agencies, four Federal employee unions, and the parties, the Board held that, although its authority to mitigate must be exercised with appropriate deference to

---

[6] We need not remand the appeal because the record is fully developed on this issue.

agency management, it nevertheless has the authority to "mitigate penalties when the Board determines that the agency-imposed penalty is clearly excessive, disproportionate to the sustained charges, or arbitrary, capricious, or unreasonable." *Id.* at 284, 301-02 (further holding that the Board, like its predecessor Civil Service Commission, "will consider whether a penalty is clearly excessive in proportion to the sustained charges, violates the principle of like penalties for like offenses, or is otherwise unreasonable under all the relevant circumstances."). Thus, the Board's role "is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness." *Id.* at 306. The ultimate burden is upon the agency to persuade the Board of the appropriateness of the penalty imposed. *Id.* at 307.

¶17 The Board has held that the seriousness of the offense is always one of the most important factors in assessing the reasonableness of an agency's penalty determination. *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 7 (2013). There can be no dispute that the sustained misconduct—screaming in the workplace and making unwanted physical contact with another agency employee—is serious. HT at 367 (testimony of the deciding official) (testifying that the appellant's misconduct was "very, very serious" because employees were "alarmed" and "Security was called"). Other aggravating factors include the appellant's 5-day suspension in February 2015, just 6 months before the incident at issue here, based on a charge of unprofessional conduct (including specifications that she yelled or screamed at various agency officials and ran and screamed through the headquarters building), a letter of reprimand in March 2014 based on failure to follow instructions, and two letters of warning in 2014 for loud and unprofessional behavior and unprofessional behavior, respectively. IAF, Tab 7 at 73-89. Additionally, as discussed above, *supra* ¶¶ 11-13, the appellant's misconduct negatively affected her supervisors' confidence in her ability to perform her assigned duties. The deciding official also stated in the

decision letter, and reaffirmed in his testimony, that the appellant had not demonstrated a good potential for rehabilitation because she expressed no remorse for her actions, she did not seem to recognize that her behavior was inappropriate, and the relevant events occurred less than 1 year after she received a 5-day suspension for unprofessional conduct as a result of "yelling" at her supervisor and "running and screaming through the . . . headquarters building." IAF, Tab 6 at 44; HT at 337 (testimony of the deciding official).

¶18    We now turn to "mitigating circumstances surrounding the offense such as unusual job tensions . . . [and] mental impairment," among other things. *Douglas*, 5 M.S.P.R. at 305.   There are numerous mitigating factors present in this case.   For example, we have considered the appellant's argument that the removal action should be mitigated because she suffers from various medical conditions, including hearing loss, anxiety, depression, and adjustment disorder that contributed to her behavior during the incident in question.   PFR File, Tab 9 at 24-25.   When mental impairments or illnesses are reasonably substantiated and shown to be related to the reasons for removal, they must be considered in the penalty analysis.   *Malloy*, 578 F.3d at 1356.

¶19    The appellant's numerous medical conditions are documented in the record and were well-known to the agency.   The appellant was appointed in 2010 under Schedule A authority, 5 C.F.R. § 213.3102(u), for individuals with a severe physical disability (hearing loss).   IAF, Tab 9 at 71.   Due to the appellant's earlier reasonable accommodation requests,[7] Family and Medical Leave Act of 1993 (FMLA) requests,[8] and prior EEO activity,[9] the agency and the appellant's supervisors knew that the appellant was seeing an oncologist for breast cancer

---

[7] *E.g.*, IAF, Tab 15 at 22-52, Tab 17 at 69, Tab 19 at 197-201.

[8] The appellant testified, and the record reflects, that she "us[ed] a whole lot more leave," including FMLA leave, between March and mid-August 2015.   HT at 51 (testimony of the appellant); IAF, Tab 15 at 63-66, Tab 19 at 60-62.

[9] *E.g.*, IAF, Tab 6 at 13-14, 16-34, 118-26.

and lymphedema treatments; a cardiologist for stress, shortness of breath, and heart palpitations; a psychiatrist for anxiety and depression; and an audiologist for hearing loss and hearing aid issues.

¶20    Turning to the incident in question, some of the appellant's medical conditions likely played a role in her behavior.  The appellant testified that, after her supervisor advised her during the August 19, 2015 meeting that her accommodation request was denied, IAF, Tab 15 at 51-52, she felt "numb" and "despair," she "started feeling anxious," and she "started crying," HT at 400-02 (testimony of the appellant).  She further testified that she left her office and decided to go to the EEOCO Division to obtain the FOH determination upon which the denial of her reasonable accommodation request was based. *Id.* at 402-03 (testimony of the appellant).  Once she arrived at the EEOCO Division and was told that she would have to make a Freedom of Information Act request to obtain the FOH determination, the appellant testified that she was "disappointed," "emotionally distraught," "crying," "may" have spoken loudly, held her hands in fists and started shaking them up and down, said she felt "like throwing something," stomped her foot, and pouted. *Id.* at 405, 408, 410-13 (testimony of the appellant).

¶21    The Board has found that a medical or mental impairment is not a significant mitigating factor in the absence of evidence that the impairment can be remedied or controlled, i.e., when the potential for rehabilitation is poor. *Mingledough v. Department of Veterans Affairs*, 88 M.S.P.R. 452, ¶ 12 (2001).  Here, however, the appellant's doctor indicated on March 20, 2015, that accommodations of an alternate work schedule (AWS) with one day off per pay period, a delayed start time, and 3 days per week of telework, which the agency had denied, would give the appellant the rest and recovery she needed for her numerous medical conditions and allow her "to get additional sleep [that] she needs due to insomnia [and] will allow her to better manage her anxiety."  IAF, Tab 19 at 65, Tab 29 at 4-6.  We therefore find that the appellant's medical

conditions and mental impairments could potentially be controlled and constitute a mitigating factor.[10]

¶22    Additionally, although we have sustained the charge, the context in which the misconduct occurred is relevant to determine whether the penalty imposed is reasonable. *Daigle*, 84 M.S.P.R. 625, ¶ 6. Indeed, the context in which the appellant's misconduct occurred was her attempts to use the EEO process to address her known disabilities. It is not unusual to have high stress engagements when conflict management issues arise in the workplace, such as EEO allegations and the bringing forth of allegations of wrongdoing in the workplace. As the administrative judge noted in the initial decision in her nexus analysis, the type of disruption described in this case required EEO specialists to assess, inform, and console distraught employees. ID at 13. Significantly, the administrative judge found that none of the employees in the EEOCO office felt threatened by the appellant's behavior. ID at 8-9. Moreover, the administrative judge concluded that the appellant's emotional upset during the incident led to her "incidental contact" with the employee's arm. ID at 9. For these reasons, we view the context surrounding the incident of unprofessional conduct as a mitigating factor.

---

[10] The administrative judge found that the appellant had telework and AWS privileges at one time, but that they "did not help her to arrive at work on time, and did not prevent her from engaging in repeated inappropriate conduct." ID at 18. She therefore concluded that the appellant did not prove her disability discrimination claim because the requested accommodations, even if granted, would not be effective. *Id.* This finding appears to be based on the fact that, as a result of a reprimand on March 24, 2014, for tardiness and failure to follow leave-requesting instructions, the agency disqualified the appellant from telework and an AWS at that time. ID at 2; IAF, Tab 8 at 91-93. The fact that the requested accommodations may not have prevented the appellant's tardiness, failure to follow leave-requesting procedures, or other misconduct in March 2014 or earlier does not demonstrate that providing an accommodation such as that indicated by the appellant's doctor in March 2015 would not control, for purposes of determining the reasonableness of the penalty, the medical conditions that played a role in the type of unprofessional conduct at issue in this case. *See, e.g.*, *Complainant v. Department of Health and Human Services*, EEOC Appeal No. 0120111422, 2015 WL 1419939 (Feb. 25, 2015), at *3 (holding that employers have an ongoing obligation to provide reasonable accommodations).

¶23    There also are other mitigating factors.  Although the appellant had a minimally successful 2014 performance appraisal, her June 2015 rating was fully successful, which the deciding official found "promising," and she had 5 years of Federal service.  IAF, Tab 14 at 68-89; HT at 143 (testimony of the proposing official), 363-64, 369 (testimony of the deciding official).  We have also considered that the appellant was asked during her testimony whether she was sorry for what transpired on August 19, 2015.  HT at 424 (testimony of the appellant).  Although the appellant initially stated that she was sorry because she "[felt] like [she] gave [her supervisors] what they wanted," which was "ammunition to put [her] out of work," she also testified that she was "very sorry" for what happened, that she "wish[ed] that [she] was not as emotional," "[she] tried not to be," and "[t]hat's why [she] tried to get help."  *Id.*  These statements, showing that the appellant acknowledged the role her emotions played in the misconduct as well as her desire to control those emotions and "get help," demonstrate remorse for the past conduct and a potential for rehabilitation.

¶24    Finally, we have considered the consistency of the penalty with those imposed on other employees for the same or similar offenses.  The Board has recently clarified that, when analyzing disparate penalty claims,[11] the relevant inquiry is whether the agency knowingly and unjustifiably treated employees who engaged in the same or similar offenses differently.  *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶¶ 10, 14.

¶25    The deciding official testified that he was only aware of the two comparator employees identified in the proposal notice; he denied knowing about any other comparators.  HT at 350-56 (testimony of the deciding official); IAF, Tab 6 at 43, Tab 7 at 56.  The two comparator employees identified in the proposal notice were:  (1) a GS-12 Auditor who was removed in 2015 for a third offense of unprofessional conduct (yelling at his manager, using vulgar language, walking

---

[11] The appellant's attorney indicated during the hearing that the comparator evidence was only relevant to the penalty analysis.  HT at 356-58.

towards his manager with his fists clamped, and screaming at other staff) and for a first offense of damage to Government property (slamming his Government laptop into his desk); and (2) a GS-13 Auditor who was suspended for 14 days in 2012 for a third offense of disrespectful conduct towards a supervisor (raising her voice at her supervisor, repeatedly interrupting her supervisor during a meeting, and refusing to discuss work-related matters with her supervisor) and a second offense of failure to follow instructions.[12] The deciding official stated in the decision letter that the appellant's actions were similar to the first comparator's misconduct in that "[her] behavior alarmed the witnesses to such a degree that [she was] escorted out of the building" and the "level of hostility and anger that [she] displayed . . . caused employees . . . to fear for their personal safety." IAF, Tab 6 at 43. We disagree with the deciding official's conclusion that the appellant's misconduct was similar to the misconduct of comparator (1). Rather, we find that the sustained misconduct of comparator (1), in total, is more serious than the misconduct sustained against the appellant. Accordingly, we are not persuaded that comparator (1) is a proper comparator. We further find that the agency's decision to issue to comparator (2) a 14-day suspension for disrespectful conduct and failure to follow instructions supports mitigating the penalty in this matter given the agency's clear reliance on this comparator despite having apparently been assigned to a different work unit from the appellant. *See Singh*, 2022 MSPB 15, ¶13 (finding that a comparator need not always have to be in the same work unit or under the same supervisor.). The agency, which bears the burden to prove that the removal penalty is reasonable, *Malloy*, 578 F.3d at 1356, has not persuasively explained its decision to remove the appellant instead of issuing her a 14-day suspension as it did for comparator (2). We therefore find that this *Douglas* factor weighs in the appellant's favor.

¶26

---

[12] The corresponding documentation for these comparators is at IAF, Tab 19 at 234-54, Tab 20 at 105-10, 116-21.

¶27    In conclusion, we find that the mitigating factors, including the context in which the misconduct occurred and the impact of the appellant's medical and mental conditions on her behavior during the incident in question, coupled with the appellant's sincere expressions of remorse, and the agency's unpersuasive comparator analysis, outweigh the aggravating factors. The penalty of removal is therefore disproportionate to the sustained charge and otherwise unreasonable under all the relevant circumstances. *Douglas*, 5 M.S.P.R. at 284, 301-02. Accordingly, we mitigate the removal penalty to a 14-day suspension.

## ORDER

¶28    We ORDER the agency to cancel the removal action, substitute in its place a 14-day suspension, and restore the appellant to her Investigations Analyst position. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶29    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶30    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶31    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶32    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT**
**REGARDING YOUR RIGHT TO REQUEST**
**ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                         Jennifer Everling
                                         Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel                    Operations                    at                    504-255-4630.

¶1      For the reasons explained below, I respectfully dissent from the majority opinion in this case.

¶2      I agree with the majority's findings that the agency proved both specifications, the charge, and nexus, and that the appellant failed to prove her affirmative defenses.  I don't find wildly unreasonable the majority's rationale for believing a 14-day suspension is a more appropriate penalty than removal.  Yet nor do I find wildly unreasonable the agency's rationale for removing the appellant, and therein lies the problem.  In a case such as this where reasonable minds could differ, the Board's role with respect to reviewing the penalty has been clearly defined by the seminal 1981 decision in *Douglas v. Veterans Administration*: "Our role in this area, as in others, is principally to assure that managerial discretion has been legitimately invoked and properly exercised." 5 M.S.P.R. 280, 301 (1981).  More specifically, according to *Douglas*:

> [T]he Board's review of an agency-imposed penalty is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a balance within the tolerable limits of reasonableness.  Only if the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment *clearly exceeded the limits of reasonableness*, is it appropriate for the Board to then specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness.

5 M.S.P.R. at 306 (emphasis added).  This holding of *Douglas* has remained intact to this day.  *See*, *e.g.*, *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 19.  There are several reasons for the Board to defer to reasonable exercises of judgment and discretion by agency officials.  As noted in *Douglas*, the agency has "primary discretion in managing its workforce," including in maintaining

employee discipline and efficiency. *Douglas*, 5 M.S.P.R. at 306. Agency officials are closest to the facts and circumstances of the misconduct in any given case, and are in the best position to weigh its gravity as it relates to the mission and work of the agency. Furthermore, the agency actually has to live with the outcome of the disciplinary process, whether that be returning the employee to service after appropriate discipline or continuing without the assistance of the employee.

¶3 In light of these considerations and their longstanding application to the Board since *Douglas*, "it is decidedly not the Board's role to decide what penalty we would impose if we were the deciding officials," as I noted last year in my dissent in *Chin v. Department of Defense*, 2022 MSPB 34. Or, as the Board wrote in *Douglas*: "The Board's role in this process is not to insist that the balance be struck precisely where the Board would choose if the Board were in the agency's shoes in the first instance[.]" *Douglas*, 5 M.S.P.R. at 306. Yet here, the majority deviates from these well-settled principles to mitigate the agency's reasoned penalty of removal to a 14-day suspension.

¶4 The Board has frequently stated that the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibility, is the most important factor in assessing the reasonableness of a penalty. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 18. The deciding official found the appellant's misconduct was "very, very serious." Hearing Transcript (HT) at 336. He testified this was the most significant factor in his penalty analysis. *Id.* He also found the appellant's misconduct was "directly relate[d] to [her] position with the Agency." Initial Appeal File (IAF), Tab 1 at 15. In particular, he considered that a critical element of the appellant's performance plan was "Collaborating with Others." *Id.* at 16; HT at 367. This critical element lists as a requirement: "Fosters an organizational climate that reinforces treating others with professionalism, courtesy, respect; is recognized at all levels as a model of

professionalism and fairness . . . Behaves in a professional manner at all times."[*] IAF, Tab 7 at 102. The deciding official lost trust in the appellant's "ability to behave in a professional manner" and exhibit self-control. IAF, Tab 1 at 15; HT at 367.

¶5 Notwithstanding, the majority mitigates the penalty based on its analysis of the following factors: (1) the context in which the appellant's misconduct occurred; (2) the appellant's expression of remorse; (3) the appellant's fully successful performance rating in June 2015, *see* IAF, Tab 7 at 114; (4) the appellant's length of service; (5) the appellant's medical conditions; and (6) the consistency of the penalty with those imposed on other employees for the same or similar offenses.

¶6 Like my colleagues, I am sympathetic to the context in which the appellant's misconduct occurred in this instance—namely, that she was in the Equal Employment Opportunity (EEO) office. However, as the deciding official correctly observed, the appellant's misconduct was not "an isolated occurrence of unprofessional behavior." IAF, Tab 1 at 15. Notably, he considered that the appellant received a 5-day suspension effective February 23, 2015, for unprofessional conduct. *Id.*; *see* IAF, Tab 7 at 82-89. Further, her 2014 midyear progress review and 2014 performance appraisal revealed numerous incidents where she failed to act in a professional manner with her coworkers. IAF, Tab 1 at 16; *see* IAF, Tab 7 at 105, 112-13. One such incident occurred in October 2014, when the appellant was "screaming and running through the OIG headquarters building." IAF, Tab 1 at 16; *see* IAF, Tab 7 at 113. She received a Letter of Reprimand on March 24, 2014, for failure to follow instructions. IAF, Tab 1 at 16; *see* IAF, Tab 7 at 79-81. She also received letters of warning on January 24 and June 27, 2014, for unprofessional behavior. IAF, Tab 1 at 18; *see*

---

[*] Between late January and early February 2014, the appellant completed three online training courses regarding professionalism and courtesy. IAF, Tab 7 at 75, 90-92; HT at 370.

IAF, Tab 7 at 73-78. None of these prior instances of unprofessionalism occurred in the EEO office, so the misconduct was not isolated to a specific setting.

¶7        The deciding official found the appellant's past history of counseling and discipline significant in reaching his decision. HT at 336. He also found the appellant failed to express remorse for her conduct and did not appear to recognize that her conduct was inappropriate. IAF, Tab 1 at 18. For instance, he considered that the appellant stated in her written reply, "Unfortunately, I stated that I felt like throwing something, but this was no different from someone implying they needed to kick a trashcan." IAF, Tab 1 at 15, Tab 6 at 111. He determined, in light of the appellant's history of prior discipline and counseling, as well as her lack of remorse, that no lesser penalty would suffice to deter future misconduct. HT at 370.

¶8        The majority notes that, in response to being asked at the hearing whether she was sorry for what happened on August 19, the appellant testified she is "very sorry" and wishes that she was "not as emotional" and "not in that place." HT at 424. However, at the beginning of her response to this question, the appellant said she was sorry because she gave the agency "ammunition" to remove her and she "was trying to keep [her] job." *Id.* She reiterated, at the end of her response, that she was sorry because she "felt like in the end [she] gave them what they needed to put [her] out of work" and she "wanted [her] job." *Id.* I find this is indicative of remorse as to the consequences of the misconduct, not as to the misconduct itself. I also find significant that the appellant did not offer any apology in responding to the proposed action. *See generally* IAF, Tab 6 at 99-112. I would not disturb the deciding official's determination as to the appellant's level of remorse. *See Wynne v. Department of Veterans Affairs*, 75 M.S.P.R. 127, 137 (1997) (the appellant's "belated, lukewarm expression of remorse" was insufficient to show rehabilitative potential and did not constitute a significant mitigating factor).

¶9    I agree with the majority that the appellant's length of service and fully successful performance review in June 2015 are mitigating factors. However, the deciding official considered these factors and found they did not outweigh the aggravating factors. IAF, Tab 1 at 16; HT at 365, 369. He found "that the five years of federal service[] was mitigating." HT at 365. While he "saw the 2015 review as something promising," he "didn't see it as . . . a substantial change over a substantial period of time." HT at 369. Indeed, the misconduct at issue in this appeal took place in August 2015, after the improvement documented in June 2015.

¶10   The majority also finds mitigating that some of the appellant's medical conditions "likely" played a role in her behavior and that the appellant's medical conditions and mental impairments "could potentially" be controlled. The administrative judge found the appellant failed to meet her burden to prove that her requested accommodations—a delayed start time, an alternative work schedule (AWS), and 3 days of telework per week—would have been effective. Initial Decision at 18. The administrative judge noted, "[I]t is undisputed that the appellant did have telework and AWS privileges at one time, and these . . . did not prevent her from engaging in repeated inappropriate conduct, resulting in progressive discipline." *Id.* In addition, the administrative judge found the appellant "admitted the agency never denied her requests for leave in connection with her mental health conditions" and that the agency granted the appellant a delayed start time. *Id.* The majority affirms these findings.

¶11   The majority's speculative conclusion that the appellant's medical conditions and mental impairments "could potentially" be remedied or controlled is inconsistent with affirming the administrative judge's findings concerning the appellant's failure to accommodate claim. I recognize that an employer's obligation to provide reasonable accommodation is ongoing and an employee's medical condition and accommodation needs may change over time. However, *Mingledough v. Department of Veterans Affairs*, 88 M.S.P.R. 452, ¶ 12 (2001),

which the majority cites, does not contemplate relying on speculation to support mitigation. Rather, the Board in *Mingledough* indicated that medical or mental impairment is not a significant mitigating factor unless there is "evidence that the impairment *can*," not might, "be remedied or controlled." *Id.* (emphasis added). The Board determined the appellant's psychological impairments were "not a significant mitigating factor in light of the seriousness of his misconduct and his poor potential for rehabilitation." *Id.* There was "no evidence that the appellant's psychological impairments *have* been remedied or controlled" and the appellant's potential for rehabilitation was "questionable at best." *Id.* (emphasis added). Accordingly, the Board reinstated the removal which the administrative judge had mitigated to a suspension. *Id.*

¶12    Here, the deciding official gave serious consideration to the appellant's medical conditions in determining what penalty to impose. He explicitly considered the appellant's assertions that she suffers from anxiety and depression; that her medical conditions caused her behavior; and that the work environment was damaging to her health. IAF, Tab 1 at 18; HT at 365-66. However, he concluded "these mitigating circumstances do not outweigh the seriousness of the misconduct at issue." IAF, Tab 1 at 18. He also found the appellant had not provided any evidence that her unprofessional conduct would not occur again, particularly given that her behavior had not improved despite a history of lesser disciplinary actions. *Id.* at 18-19. He found the appellant failed to establish "any correlation between her lack of self-control and her medical condition" or her actions on the day in question. HT at 365-67. I would not disturb these well-reasoned conclusions.

¶13    As to the consistency of the penalty with those imposed on other employees for the same or similar offenses, the deciding official considered two comparators. IAF, Tab 1 at 17; HT at 350-51. The majority finds comparator (2) supports mitigation of the penalty. The appellant was an Investigations Analyst in the Office of Investigations and had just over 5 years of service, whereas

comparator (2) was an Auditor in the Office of Audit Services with nearly 26 years of service. IAF, Tab 1 at 7, 13, 16, Tab 20 at 116; *see also Singh*, 2022 MSPB 15, ¶ 13 ("[T]he fact that two employees come from different work units and/or supervisory chains remains an important factor in determining whether it is appropriate to compare the penalties they are given. In most cases, employees from another work unit or supervisory chain will not be proper comparators."); *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 14 (2013) (finding length of service to be a "significant distinction" in evaluating the difference in treatment between employees).

¶14     The deciding official also found the appellant's misconduct distinguishable from comparator (2)'s misconduct, in that the appellant's "behavior alarmed the witnesses to such a degree that [she was] escorted out of the building" and "caused employees in the HHS/EEOCO Division to fear for their personal safety." IAF, Tab 1 at 17. This is well-supported in the record. *See* HT at 177 (proposing official testifying, "I frankly was afraid for individuals in the office and the safety"); HT at 224 (Reasonable Accommodation (RA) Case Manager testifying she "was absolutely concerned about workplace safety" and reported to security that the appellant was "having a violent or emotional meltdown"); IAF, Tab 7 at 62 (RA Case Manager written memorandum stating, "I explained that there was an extremely upset employee that was having a violent meltdown and that the situation was getting worse and we needed assistance quickly"); *id.* at 64 (EEO Office Branch Chief written memorandum stating, "While most did not feel physically threatened by what had just happened, they did express concern that an event like this could become something much worse and how do we protect ourselves is [sic] this happens again but at a higher threat level"); *id.* at 66, 69 (two additional employees indicating in written memoranda that they alerted security again because no guard had arrived although the RA Case Manager had already requested assistance; one employee stated, "This was a situation where the visiting complainant became violent"); *id.* at 72 (EEO Office Director written

memorandum stating the appellant's "entire demeanor was unsettling, disruptive, and threatening to the safety of the staff").  Thus, I would not disturb the deciding official's assessment that comparator (2) is not a proper comparator.  In any event, mere unevenness in the application of a penalty is not a reason in itself for invalidating the penalty.  *Rogers v. Department of Defense Dependents Schools*, 814 F.2d 1549, 1555 (Fed. Cir. 1987).

¶15      Overall, the deciding official deliberately and thoroughly weighed the *Douglas* factors.  I respect that my fellow Board members would have weighed these factors differently.  Because the majority believes mitigating factors outweigh aggravating factors in this case, it concludes that "the penalty of removal is therefore disproportionate to the sustained charge and [']otherwise unreasonable under all the relevant circumstances[']" (quoting *Douglas*, 5 M.S.P.R. at 302).  Clearly *Douglas* indicates the Board will and should consider these factors.  However, having considered those factors, only if an agency's judgment "*clearly* exceeded the limits of reasonableness," *id.* at 306, putting them outside "tolerable limits of reasonableness," *id.* at 302, 306, does *Douglas* hold it appropriate for the Board to "bring the penalty within the parameters of reasonableness," *id.* at 306.  I strongly believe that in a case such as this where reasonable minds could differ, an agency's judgment has not "*clearly* exceeded the limits of reasonableness," and management's proper exercise of discretion should not be displaced.


/s/
_____
Tristan L. Leavitt
Member