**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

WILMA J. BRADLEY,
          Appellant,

     v.

DEPARTMENT OF EDUCATION,
          Agency.

DOCKET NUMBER
AT-0432-20-0090-I-1

DATE: December 30, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Danielle B. Obiorah</u>, Esquire, Jonesboro, Georgia, for the appellant.

<u>Michael S. Taylor</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which sustained her removal for unacceptable performance under chapter 43. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the appeal to the Atlanta Regional

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Office for further adjudication consistent with *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

The appellant was previously employed as a GS-11 Loan Analyst with the agency's office of Federal Student Aid in Atlanta, Georgia. Initial Appeal File (IAF), Tab 5 at 130. As a Loan Analyst, her primary duties included processing refunds for student loan borrowers, providing oversight of student loan "vendors" (such as Sallie Mae), and responding to borrower complaints against vendors. IAF, Tab 4 at 106-08, Tab 27, Hearing Compact Disc (HCD) (testimony of the appellant's supervisor). The appellant's fiscal year (FY) 2019 performance standards included three critical elements, and each critical element had a number of underlying components or sub-elements. IAF, Tab 4 at 106-08.

In a memorandum dated August 16, 2018, the agency informed the appellant that her performance was not meeting the requirements at the "Results Achieved" fully successful performance level for all three critical elements and offered her the opportunity to complete a 60-day Informal Assistance Plan (IAP)[2], which is the agency's voluntary precursor to a Performance Improvement Plan (PIP). IAF, Tab 4 at 20, 40-41, 79-83. On November 14, 2018, the appellant received a rating of "Unsatisfactory Results" for all three critical elements of her FY 2018 performance plan, resulting in an Unsatisfactory Results summary rating. *Id.* at 103-05. By a memorandum dated February 8, 2020, the appellant's first-line supervisor placed her on a 90-day PIP from February 9, 2020 through May 9, 2020, noting that, despite the opportunity to improve her performance during the IAP, the appellant's performance remained unsatisfactory in all three critical elements, identified as Call Reviews, Vendor Oversight, and Complaint Resolutions. *Id.* at 109-13. The PIP noted that the three critical elements in the

---

[2] At some locations in the record, an "IAP" is also referred to as an "Individual Assistance Plan." IAF, Tab 4 at 8, 20. There is no indication in the record that an "Individual Assistance Plan" and an "Informal Assistance Plan" differ in any respect.

appellant's FY 2019 performance plan were carried over from the FY 2018 performance plan and identified a list of "performance issues" for each critical element that contributed to the appellant's inability to perform at the Results Achieved performance level. *Id.* at 110-12. Additionally, the PIP letter included bullet points under each critical element instructing the appellant of what she must do in order to bring her performance up to the Results Achieved level by the end of the PIP period. *Id.*

In a memorandum dated July 9, 2019, the agency informed the appellant that she had failed to improve her performance to the Results Achieved level for all three critical elements, and consequently, that it was proposing her removal from Federal service. IAF, Tab 4 at 69-75. After considering the appellant's August 1, 2019 written response and supporting evidence, the deciding official sustained the decision, removing the appellant effective September 13, 2019. IAF, Tab 5, Tab 6 at 4-118, 127-34. The appellant timely appealed the removal decision to the Board and raised affirmative defenses of discrimination on the bases of disability, race, and sex, and reprisal for protected equal employment opportunity (EEO) activity. IAF, Tab 1, Tab 25 at 2.

After holding the appellant's requested hearing, the administrative judge issued an initial decision affirming the removal action, IAF, Tab 34, Initial Decision (ID) at 1, 29. Specifically, the administrative judge found that the agency proved by substantial evidence that the appellant's performance was unacceptable for critical element 1 at the end of the PIP period. ID at 7-17. The administrative judge also determined that, because the agency met its burden of proving that the appellant's performance was unacceptable for critical element 1, he did not need to determine whether it met its burden of proving that her performance remained unsuccessful under critical elements 2 and 3. ID at 8. Finally, the administrative judge concluded that the appellant failed to prove her affirmative defenses of discrimination on the bases of race, sex, and disability, and reprisal for protected EEO activity. ID at 17-29.

The appellant timely filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency responded in opposition. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

Consistent with the U.S. Court of Appeals for the Federal Circuit's decision in *Santos*, 990 F.3d 1355, 1360-63, we are remanding this appeal for further adjudication. In *Santos*, the court held for the first time that, in addition to the elements of a chapter 43 case set forth by the administrative judge, an agency must also show that the initiation of a PIP was justified by the appellant's unacceptable performance before the PIP. *Id.* Prior to addressing the remand, however, we address the administrative judge's findings on the elements of a chapter 43 appeal as they existed at the time of the initial decision and the appellant's arguments on review. As set forth below, we discern no basis to disturb those findings.

When the initial decision was issued, the Board's case law provided that, in a performance-based action under 5 U.S.C. chapter 43, an agency must establish by substantial evidence that: (1) the Office of Personnel Management (OPM) approved its performance management system; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 13; *White v Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013); *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010).

Below, the administrative judge found that the agency proved that OPM approved its performance appraisal system, that the pertinent performance standards were valid and the agency communicated them to the appellant, that the

agency warned the appellant of her unacceptable performance and provided her with a reasonable opportunity to improve, and that, following that opportunity to improve, the appellant's performance remained unacceptable in at least one critical element. ID at 8-16. Based on the foregoing, the administrative judge concluded that the agency "justified its [c]hapter 43 removal by substantial evidence." ID at 16.

We discern no error in the administrative judge's findings regarding the chapter 43 performance-based removal action under pre-*Santos* law.

On review, the appellant argues that the administrative judge erred in concluding that the agency communicated her performance standards and critical elements. PFR File, Tab 1 at 8-10. She also argues that the administrative judge incorrectly concluded that the agency was not required to evaluate her performance based on all of the underlying components or sub-elements of critical element 1 in determining that her performance was unsatisfactory under that critical element. *Id.* at 10-11. Consequently, she asserts that the administrative judge erred in determining that the agency met its burden of proving that her performance remained unacceptable in critical element 1 at the end of the PIP period. *Id.* at 11. Similarly, the appellant alleges that the administrative judge erred by failing to consider whether the agency met its burden of proving that her performance was inadequate under critical elements 2 and 3. *Id.* at 9. Finally, she argues that the administrative judge failed to consider whether the deciding official was required to take the appellant's medical condition into account in reaching his removal determination. *Id.* at 11-12. Specifically, the appellant asserts that the administrative judge misconstrued her argument that the deciding official was required to consider her medical condition as a claim that her disability should have been a mitigating factor in the agency's removal determination, concluding that the Board does not mitigate an agency's penalty determination in an action taken under chapter 43, when, instead, she was attempting to raise the claim as an affirmative defense.

*Id.*; ID at 27 n.11. As set forth below, these arguments do not provide a basis to disturb the administrative judge's findings.

> *The administrative judge correctly concluded that the agency communicated the appellant's performance standards and critical elements prior to, and during, the PIP period.*

On review, the appellant alleges that the guiding language used in the PIP for critical element 1 was vague, noting that the language instructing her to close out "most if not all" of her current account activity inventory on any given day did not provide her with a firm benchmark for acceptable performance. PFR File, Tab 1 at 9-10. Acknowledging the administrative judge's finding that there was no evidence that the agency actually rated the appellant on this component of the PIP, the appellant nevertheless argues that, because the agency included this "vague, subjective, and less than clear" language in the PIP, she was unable to determine how to improve her performance to an acceptable level during the PIP. *Id.* at 10. The appellant's argument is without merit. As an initial matter, we agree with the administrative judge's conclusion that the bulleted language under critical element 1 in the PIP instructing the appellant to close out "most if not all" of her current inventory of account activities on a given day was intended to serve as guidance for the appellant on how to meet the requirements under critical element 1, not as a standalone sub-element under the critical element. ID at 11 n.1. We also agree with his conclusion that, based on the unrebutted documentary and testimonial evidence, the agency did not rate the appellant's performance based on this cited language during the PIP period. ID at 11.

Nevertheless, even assuming that the cited language in the PIP was impermissibly vague, the Board has held that when performance standards are vague, an agency may cure the defect by "fleshing out the standards through additional oral and written communication." PFR File, Tab 3 at 8; *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 23 (2013). In addition to the PIP letter, the appellant's first-line supervisor provided her with regular email

updates during the PIP period regarding the status of her untimely assignments, held frequent in-person meetings with her concerning the status of her assignments, and provided an alternative point of contact for the appellant to direct questions to during his absences. IAF, Tab 4 at 154-75, 179-90; HCD (appellant's testimony). In these oral and written communications, the appellant's first-line supervisor provided detailed assessments of the appellant's workload completion rates and untimely assignments and gave her the opportunity to ask clarifying questions. IAF, Tab 4 at 154-75, 179-90. Accordingly, we conclude that the agency cured any defect caused by the potentially vague language in the PIP letter by properly communicating the appellant's performance standards and critical elements to her and clearly informing her of what she needed to do to raise her performance to an acceptable level during the PIP period.

*The administrative judge correctly determined that the appellant failed to meet her performance requirements under critical element 1 as a whole.*

Next, the appellant argues that the administrative judge erred in concluding that the agency was not required to rate her on the work product quality component of critical element 1. PFR File, Tab 1 at 10-11. Critical element 1 of the appellant's FY 2019 performance plan identified both a quantitative component, requiring the appellant to process "[a] minimum of 95% of the accounts assigned" within 2 business days, and a qualitative component, requiring her to maintain a "quality control score of at least 95%." IAF, Tab 4 at 107. By contrast, the PIP notice informed the appellant only that she needed to complete "95% of [her] account activities" within 3 business days. *Id*. at 110. Explaining this discrepancy at the hearing, agency witnesses testified that, although the agency included the quality control metric in the FY 2019 performance plan and in prior years' performance plans with the intention of rating Loan Analysts on this metric, the agency had not yet been able to "effectively develop a quality

[control] score system," so Loan Analysts were not held accountable for this component of the critical element. HCD (testimony of the appellant's first- and second-line supervisors).

Addressing the appellant's argument that the agency's failure to rate her on the quality control component of the performance plan invalidated the performance standards, the administrative judge cited *Rogers v. Department of Defense Dependents Schools*, 814 F.2d 1549 (Fed. Cir. 1987), noting that an agency can satisfy its burden of showing that an employee's performance on fewer than all of the components or sub-elements of a critical element still warranted an unacceptable rating on the critical element as a whole if it can provide evidence of the following: (1) the employee knew or should have known the significance of the sub-element, and (2) the importance of the component or sub-element in relation to the duties or responsibilities of the critical element as a whole. ID at 12-13. Determining that the evidence in the record demonstrated that the appellant was expressly placed on notice that her untimeliness was the agency's "primary and overriding concern," the administrative judge concluded that the agency proved by substantial evidence that the appellant's performance was unacceptable under critical element 1, as a whole, at the end of the PIP period. ID at 13.

On review, the appellant reasserts that, had she been rated on the quality control element during the PIP, her performance may have been assessed at the Results Achieved performance level, and that the record does not support the administrative judge's finding that the agency relayed to her the preeminence of the timeliness component of the critical element. PFR File, Tab 1 at 11. We disagree. As the administrative judge correctly observed, an agency need not show that an employee's performance was unacceptable on a majority of components of a critical element in order to prove unacceptable performance on the critical element "as a whole." *See Rogers*, 814 F.2d at 1554 (finding that unsatisfactory performance on one of six components of one critical element and

two of four components of another warranted an unacceptable rating on both critical elements); *Wallace v. Department of the Air Force*, 879 F.2d 829, 834 (Fed. Cir. 1989) (recognizing that an appellant's failure to meet a single component of one critical element may be sufficient to justify removal for unacceptable performance); *Lee*, 115 M.S.P.R. 533, ¶ 37 (finding that unsatisfactory performance in two of six components of one critical element warranted an unacceptable rating in that element).

Additionally, the administrative judge considered and rejected the appellant's argument that the agency did not inform her of the importance of the timeliness component of critical element 1, noting that her first-line supervisor reassigned all of her untimely work at the start of the PIP with the intention of giving her a "fresh start" and the best opportunity to meet the timeliness metric, and provided her with written and verbal feedback during the PIP period, making clear that her untimeliness was his primary concern with regard to each of the critical elements. ID at 13; IAF, Tab 4 at 154-75, 179-90. Accordingly, we discern no basis for disturbing the administrative judge's well-reasoned finding on review. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings where the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (same).

Similarly, the appellant argues that the administrative judge erred by failing to make findings regarding her performance under critical elements 2 and 3 during the PIP period. PFR File, Tab 1 at 9. However, it is well settled that failure to demonstrate acceptable performance under even a single critical element will support removal under chapter 43. *Lovshin v. Department of the Navy*, 767 F.2d 826, 834 (Fed. Cir. 1985) (en banc); *Towne*, 120 M.S.P.R. 239, ¶ 29 n.12. We therefore agree that the administrative judge did not need to decide whether the agency presented substantial evidence of unacceptable

performance under the two remaining critical elements in order to sustain the appellant's removal under chapter 43. *See Hancock v. Internal Revenue Service*, 24 M.S.P.R. 263, 265-66 (1984).

> *The administrative judge did not err in concluding that the appellant's performance under critical element 1 remained unacceptable at the end of the PIP period.*

The appellant also challenges the administrative judge's finding that her performance remained unacceptable at the end of the PIP period, stating that the spreadsheet on which her first-line supervisor relied for evaluating her performance did not identify date information and did not establish that her work was untimely. PFR File, Tab 1 at 11. Additionally, she argues that the administrative judge discounted testimony by her co-workers that they, like the appellant, had computer issues that affected their ability to timely complete their work. *Id.*

The record includes the spreadsheets that the appellant's first-line supervisor used to track her completed work, and relevant portions of this spreadsheet were provided to the appellant throughout the PIP period. IAF, Tab 4 at 114-75. Regarding the date issue, the spreadsheets identified the date the work was assigned to the appellant and how many days it took her to complete each assignment, allowing her to readily determine which of her assignments were untimely. *Id.* at 115-21. The same is true of the spreadsheet updates periodically provided to the appellant during the PIP period. *Id.* at 155-57. Additionally, the appellant's first-line supervisor provided extensive testimony during the hearing explaining how he determined the timeliness of the appellant's assignments, which he explained to the appellant in person and by email, both before and during the PIP period. HCD (testimony of the appellant's first-line supervisor); IAF, Tab 4 at 97-98, 161-62, 169. Instead, as the administrative judge noted, the appellant appears to take issue with the manner in which the timeliness component was calculated; she does not appear to materially

dispute that the identified assignments were untimely based on the calculation method used by the agency. ID at 13 n.4.

Regarding her claim that the administrative judge discounted testimony by her co-workers that computer and connectivity issues impacted the timeliness of their work, the administrative judge concluded that, despite this testimony, the appellant failed to provide any specific instances of untimely assignments that would have been considered timely if not for her computer issues. ID at 16. Further, although both of the appellant's co-workers testified that they also experienced computer and connectivity issues, both also confirmed that they received satisfactory performance ratings during the performance periods in which they experienced the computer issues. HCD (testimony of the appellant's co-worker 1; testimony of the appellant's co-worker 2). Thus, even if they experienced disruption due to computer issues, there is no evidence in the record that those issues affected either employee's ability to perform at the successful Results Achieved performance level. Accordingly, we find no error in the administrative judge's finding that the appellant's performance remained unacceptable at the end of the PIP period.

Based on the foregoing, we discern no basis to disturb the administrative judge's findings regarding the appellant's performance-based removal under pre-*Santos* law.

We clarify the legal standards applicable to the appellant's affirmative defenses but still conclude that she failed to prove any of them.

*Title VII discrimination and retaliation claim*

Regarding the appellant's affirmative defenses of discrimination on the bases of race, sex, and reprisal for protected EEO activity, the administrative judge found that the appellant failed to prove these claims, and the appellant does not challenge those findings on review. ID at 17-19. We ultimately agree with the administrative judge's finding that the appellant failed to prove any of her

affirmative defenses, but we take this opportunity to clarify some of those findings.

In analyzing the appellant's Title VII claims, which include discrimination based on race and sex and reprisal for prior EEO activity, the administrative judge relied on the legal framework set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 51 (2015). ID at 17-19. Subsequent to the initial decision in this case, the Board issued *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, wherein it overruled *Savage* to the extent it held that the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), did not apply to Board proceedings. *Pridgen*, 2022 MSPB 31, ¶¶ 23-25. We have reviewed this case under the standards set forth in *Pridgen* and *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶¶ 11-19. Because we agree with the administrative judge that the appellant failed to meet the threshold motivating factor standard, we need not examine whether she met the "but-for" standard required for full relief.[3] *See, e.g.*, *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 32.

### Disparate treatment disability discrimination claim

Similarly, with respect to the appellant's disparate treatment disability discrimination claim, the administrative judge applied the burden-shifting analysis of *McDonnell Douglas* in analyzing this claim. ID at 27-29. In *Pridgen*, as with Title VII claims, as set forth above, the Board applied the motivating factor causation standard for disparate treatment disability discrimination claims.

---

[3] In *Pridgen*, the Board also clarified that the more stringent "but-for" standard applies to claims of retaliation arising under the Rehabilitation Act. *Pridgen*, 2022 MSPB 31, ¶¶ 44-47. Because the appellant also raises affirmative defenses related to the Rehabilitation Act, as set forth below, we have examined the record to determine whether her EEO reprisal claim includes matters related to the Rehabilitation Act. The record does not clearly establish that her prior EEO activity is related to her disability. IAF, Tab 23 at 253-55. To the extent the appellant argued below that she was retaliated against on the basis of her disability, she has not shown that such a consideration was a but-for cause of her removal. *See Pridgen*, 2022 MSPB 31, ¶¶ 44-47.

*Pridgen*, 2022 MSPB 31, ¶¶ 40, 42. Thus, under *Pridgen*, an appellant must show by preponderant evidence that her status as a disabled person was at least a motivating factor in the contested personnel action. *Id.*, ¶¶ 40, 42. Here, the administrative judge concluded that the appellant presented "no evidence to support this affirmative defense" and noted that she did not make any arguments regarding this claim in her closing brief. ID at 29. The appellant has not challenged these conclusions on review. PFR File, Tab 1. Therefore, we conclude here that, because the appellant failed to present any evidence of causation, she necessarily failed to meet the motivating factor causation standard for her disparate treatment disability discrimination claim.

*Failure to accommodate claim*

With respect to her failure to accommodate disability discrimination affirmative defense, the appellant argued below that the agency erred by failing to provide her with a reasonable accommodation for her severe allergies and back and neck issues. IAF, Tab 5 at 75-79, Tab 29 at 10-11. In the initial decision, the administrative judge concluded that, even assuming the appellant proved that she was a qualified individual with a disability, she nevertheless failed to establish that the agency did not accommodate her because she failed to fulfill her obligations under the interactive accommodation process. ID at 22. On review, the appellant reargues that the deciding official did not adequately consider her claim that she required a reasonable accommodation in reaching his removal determination, and states that the administrative judge misconstrued this argument as a claim that the deciding official should have mitigated the removal penalty, instead of as an affirmative defense claim. PFR File, Tab 1 at 11-12.

The appellant mischaracterizes the administrative judge's findings. As an initial matter, the administrative judge only addressed the issue of whether the appellant's medical condition should have been considered as a mitigating factor in the agency's removal determination in direct response to the appellant's closing brief, which cited a number of Board appeals of actions taken under

chapter 75. IAF, Tab 29 at 10-11; ID at 27 n.11. As the administrative judge noted, unlike in appeals of actions taken under chapter 75, the Board may not mitigate an agency's chosen penalty in appeals of actions taken under chapter 43, so the appellant's provided citations were inapposite. *Lisiecki v. Merit Systems Protection Board*, 769 F.2d 1558, 1566-67 (Fed. Cir. 1985); ID at 27 n.11.

Additionally, the appellant mischaracterizes the deciding official's testimony, stating that he did not consider her reply to the proposed removal "that asserted she needed a reasonable accommodation." PFR File, Tab 1 at 11. In direct testimony, the deciding official confirmed that the appellant raised issues "of medical nature" in her response to the removal proposal and that he did consider what she raised. HCD (testimony of the deciding official). When pressed on cross-examination about the amount of weight he gave to the appellant's "medical issues," the deciding official stated that he did not consider the appellant's assertion that she needed a reasonable accommodation in her response to the proposal because it was his understanding that she had not been granted a reasonable accommodation. HCD (testimony of the deciding official).

Regarding the merits of the appellant's failure to accommodate claim, we also find no error in the administrative judge's finding that the agency was justified in denying the appellant's reasonable accommodation request because she failed to engage in the interactive process. ID at 24-27. To prove a failure to accommodate disability discrimination affirmative defense, the appellant must prove that she is a disabled person,[4] that the action appealed was based on her disability, and, to the extent possible, she must articulate a reasonable accommodation under which she believes she could perform the essential duties of her position or a vacant funded position to which she could be reassigned. *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 16 (2010).

---

[4] Although the Board in *Haas*, 2022 MSPB 36, ¶ 29 & n.9, reiterated that whether the appellant proved that she is a qualified individual with a disability is generally regarded as a threshold determination, it also acknowledged some disability discrimination claims may be resolved without reaching that question.

In finding that the appellant failed to meet her burden, the administrative judge noted that the appellant failed to provide adequate medical documentation supporting her November 2017 reasonable accommodation request despite repeated requests by agency managers for supporting medical documentation. ID at 24-26. He also declined to credit the appellant's testimony that she made a subsequent reasonable accommodation request after her November 2017 request, determining that it was at odds with the documentary record and her own discovery responses stating otherwise. ID at 26 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987)); *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (observing that the Board generally must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing). The appellant has not challenged these findings on review.

Accordingly, we find no error in the administrative judge's conclusions that the agency was justified in denying the appellant's reasonable accommodation request based on her failure to engage in the interactive process, and that she therefore failed to meet her burden of proving her affirmative defense of disability discrimination based on a failure to accommodate. ID at 27; *see White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶¶ 11-14 (2013) (finding that the appellant failed to establish that the agency violated its duty of reasonable accommodation when the appellant failed to fulfill his obligations in the interactive accommodation process by not providing sufficient medical documentation); *see also Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 18 (2010) (finding that the appellant did not prove the denial of reasonable accommodation when he was unresponsive to the agency's good faith attempts to engage in the interactive process).

Based on the foregoing, we discern no basis to disturb the administrative judge's conclusion that the appellant failed to establish any of her affirmative defenses.

**Remand is necessary under *Santos* to afford the parties an opportunity to submit evidence and argument regarding whether the appellant's placement on a PIP was proper.**

Although the appellant has identified no basis for us to disturb the administrative judge's findings either with respect to the chapter 43 removal action or her affirmative defenses, we nonetheless must remand this appeal for another reason. As noted above, during the pendency of the petition for review in this case, the Federal Circuit issued *Santos*, 990 F.3d at 1360-63, in which it held that, in addition to the five elements of an agency's chapter 43 removal case set forth above, the agency must also justify the initiation of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee*, 2022 MSPB 11, ¶ 16.

Although the record in this case already contains evidence suggesting that the appellant's performance prior to the initiation of the PIP was unacceptable, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id.*, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id.* If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate in the remand initial decision his prior findings on the other elements of the agency's case and the

appellant's affirmative defenses, consistent with this Remand Order. *See id.* However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, the administrative judge should address such argument or evidence in the remand initial decision. *See Spithaler v, Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

For the reasons discussed above, we remand this case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                _____
                                         Gina K. Grippando
                                         Clerk of the Board

Washington, D.C.